**UNITED GAMEFOWL BREEDERS ASSOCIATION OF MISSOURI, Appellant,**

v.

**Jeremiah W. (Jay) NIXON, et al., Respondents.**

**No. SC 81907.**

Supreme Court of Missouri, En Banc.

May 30, 2000.

Matthew J. O'Conner, Kimberley A. Gale, Kansas City, for Appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., Gary L. Gardner, Asst. Atty. Gen., Jefferson City, for Respondents.

## PER CURIAM.

The United Gamefowl Breeders Association of Missouri seeks to invalidate Proposition A adopted by the people on November 3, 1998. *1999 Mo.Laws 1591–93*, codified at *sections 578.170 to 578.188 RSMo Supp.1999*. The circuit court denied relief, and the Association appeals. *Mo. Const. art. V. sec 3.* Affirmed.

### I.

On September 10, 1985, this Court declared unconstitutional section 578.050 RSMo 1978, which outlawed "fighting or baiting any bull, bear, cock, or other creature." *State v. Young,* 695 S.W.2d 882, 886 (Mo. banc 1985).

On October 21, 1997, the secretary of state certified, for the initiative petition submitted by Missourians Against Cockfighting, a ballot title:

> Shall a statute be enacted making it a class D felony to bait or fight animals; permit such activities on premises you control; or promote, conduct, stage, advertise or collect fees for such activities; and making it a class A misdemeanor to knowingly attend baiting or fighting animals; knowingly sell, offer for sale, or transport animals for such purposes; own, possess, manufacture or deal in cockfighting implements; bear wrestle; permit bear wrestling on premises you control; promote, conduct, stage, advertise, or collect fees for bear wrestling; or market, possess, train, or surgically alter a bear for bear wrestling?

*1999 Mo.Laws 1591.* After circulation of the petition, the secretary of state certified it as sufficient on August 21, 1998. The initiative, labeled Proposition A, passed at the 1998 general election, with 63 percent of the vote.

On February 26, 1999, the Association sought declaratory and injunctive relief against Proposition A, invoking the one-subject and clear-title requirements of the Missouri Constitution, article III, section 50. At trial, several members of the Association testified that Proposition A had harmed their business, their lifestyle, and the Association. On July 23, 1999, the circuit court entered judgment upholding Proposition A.

II.

■ The attorney general objects that the circuit court did not have jurisdiction—after the election—to consider one-subject and clear-title challenges to Proposition A, because the exclusive remedy is pre-election judicial review. The attorney general relies on two sections of chapter 116:

> Any citizen who wishes to challenge the official ballot title ... may bring an action in the circuit court of Cole County. The action must be brought within ten days after the official ballot title is certified by the secretary of state....

*Section 116.190.1 RSMo Supp.1997.*

> After the secretary of state certifies a petition as sufficient or insufficient, any citizen may apply to the circuit court of Cole County to compel him to reverse his decision. The action must be brought within ten days after the certification is made....

*Section 116.200.1 RSMo 1994.*

■ According to the attorney general, these sections are the exclusive ways to challenge an initiative measure, based on *Missourians to Protect the Initiative Process v. Blunt*, 799 S.W.2d 824, 829 (Mo. banc 1990). True, *Blunt* invalidated a measure based on a single-subject attack before the election. *Id.* at 832–33. Before the people vote on an initiative, courts may consider only those threshold issues that affect the integrity of the election itself, and that are so clear as to constitute a matter of form. *State ex rel. Trotter v.*

*Cirtin,* 941 S.W.2d 498, 500–01 (Mo. banc 1997); *Blunt,* 799 S.W.2d at 828. Whether such issues are labeled "substantive" or "procedural" is irrelevant. *Blunt,* 799 S.W.2d at 827–28; *Ketcham v. Blunt,* 847 S.W.2d 824, 833 (Mo.App.1992).

*Blunt* holds that the process for reviewing initiative measures is that found in the statutes and the state constitution. *Blunt,* 799 S.W.2d at 828. Sections 116.190.1 and 116.200.1 do not expressly provide that they are the exclusive methods for single-subject or clear-title challenges. The time periods in sections 116.190.1 and 116.200.1 are not statutes of limitations on such challenges, but only govern pre-election review.

■ The attorney general contends that sections 116.190.1 and 116.200 .1 occupy the whole field and thus preempt post-election review. To the contrary, the Constitution establishes the preemptive rules on the initiative process. *State ex rel. Upchurch v. Blunt,* 810 S.W.2d 515, 516–17 (Mo. banc 1991).

Article III, section 50 of the Constitution requires: "Petitions for laws shall contain not more than one subject which shall be expressed clearly in the title...." These requirements apply to initiative propositions both before and after approval by the voters. Therefore, the circuit court had jurisdiction of the Association's lawsuit.

III.

On the merits, the Association argues that Proposition A does not have one subject which is expressed clearly in the title, in violation of article III, section 50, of the Constitution.

*One Subject*

■ The Association asserts that Proposition A contains multiple subjects. Section B prohibits baiting or fighting animals, which includes cockfighting. *Section 578.173 RSMo Supp.1999.*[1] Section C pro-

1. All statutory citations in section III are to RSMo Supp.1999, unless otherwise indicated.

hibits bear wrestling, which is fighting between a human and a bear. *Sections 578.170(3), 578.176.* The Association claims that bear wrestling is a different subject from cockfighting and other forms of animal baiting and fighting, which occur among only non-human participants. The Association believes this is "logrolling" as voters were forced to vote for one subject in order to enact a subject they earnestly support. *See Blunt,* 799 S.W.2d at 830.

■ An initiative has one subject if all of its provisions are properly connected with a central purpose. *Buchanan v. Kirkpatrick,* 615 S.W.2d 6, 13–14 (Mo. banc 1981). A measure may encompass one subject, and yet effect several changes and incidents, if all are germane to its one controlling purpose. *Blunt,* 799 S.W.2d at 830–31.

The purpose of Proposition A is clear: to prohibit fighting involving animals for the purpose of amusement, entertainment, wagering or gain. Proposition A defines "bear wrestling" as a form of "fighting" involving an animal (a bear). *Section 578.170(3).* Bear wrestling is clearly within the purpose to prohibit fighting involving animals for the purpose of amusement, entertainment, wagering or gain. "Baiting" is defined as attacking, provoking, or harassing an animal for the purpose of "fights" with other animals. *Section 578.170(2).* Baiting is clearly within the purpose to prohibit fighting involving animals for the purpose of amusement, entertainment, wagering or gain.

As another illustration of multiple subjects, the Association objects that Proposition A criminalizes ownership, possession, manufacture, sale, barter, or exchange of cockfighting implements (such as gaffs and slashers). *See 578.173.2(3), (4).* The Association emphasizes that on its face, Proposition A does not require an intent to use these implements in cockfighting, or with any other necessary relation to actual cockfighting. *Id.*

■ The ban on cockfighting implements relates to the central purpose to prohibit fighting involving animals for the purpose of amusement, entertainment, wagering or gain. Outlawing the instrumentalities of a practice is properly connected to outlawing the practice. A proposal is liberally and nonrestrictively construed so that provisions connected with or incident to effectuating its central purpose are not treated as separate subjects. *Blunt,* 799 S.W.2d at 830.

### Clear Title

■ The Association attacks the ballot title as not clearly expressing the one subject of Proposition A. The ballot title, quoted in full above, does not mention the exemptions within Proposition A, for filmmaking, hunting, farming, poultry-raising, gamefowl-raising, and rodeos. *1999 Mo. Laws 1593 (Section E).*

At trial, a representative of the Sporting Dog Association testified that the ballot title—in addition to omitting the exemption for hunting—raised the concern whether Proposition A outlawed transporting a hunting dog to the hunt. Also at trial, a rodeo participant testified that the ballot title—in addition to omitting the exemption for rodeos—left unclear what kinds of rodeos were legal under Proposition A. Moreover, the Association objects that the ballot title does not inform voters, petition-signers, and the public of (1) the definitions within Proposition A, or (2) the means of enforcement (seizure, care and disposition of animals, or injunctions). *Sections 578.170, 578.179, 578.185.*

■ The test is whether the ballot title makes the subject evident with sufficient clearness to give notice of the purpose to those interested or affected by the proposal. *Buchanan,* 615 S.W.2d at 14 (quoting *Union Electric Co. v. Kirkpatrick,* 606 S.W.2d 658, 660 (Mo. banc 1980)). A ballot title meeting this test is not "insufficient or unfair." *Section 116.190.3 RSMo Supp. 1997; Hancock v. Secretary of State,* 885

S.W.2d 42, 49 (Mo.App.1994); *Bergman v. Mills,* 988 S.W.2d 84, 92 (Mo.App.1999).

The ballot title here sufficiently and fairly indicates the single purpose: to prohibit fighting involving animals for the purpose of amusement, entertainment, wagering or gain. The title clearly poses whether such fighting should be outlawed, mentioning several common animal fights and summarizing the prohibitions of Proposition A.

■ Ballot titles for initiatives are limited to 100 words. *Section 116.334.* The ballot title for Proposition A was about 100 words. Within these confines, the title need not set out the details of the proposal. *Buchanan,* 615 S.W.2d at 14. The title to Proposition A stresses that it criminalizes baiting and fighting animals, and knowingly transporting animals for such purposes. The title, in fact, alerted those affected in the sporting dog, rodeo, and cockfighting groups, as acknowledged by the concerns and comments of their representatives before the election. The ballot title need not resolve every question about cases at the periphery of the proposal.

■ Moreover, the General Assembly amended the sporting dog and rodeo exemptions in 1999. *H.B.79, 1999 Mo.Laws 274–75,* codified at *section 578.182.* In its amendment, the legislature recognized Proposition A's "risk of criminalization of unintended activities." *Id.* section 2. The Association contends that this legislative recognition shows that Proposition A contained more than one subject which was not clearly expressed in the title.

The Association overlooks the legislature's "sole purpose" in enacting the 1999 amendment: "correcting technical errors in the drafting of Section E" of Proposition A. *Id.* The General Assembly clarified the bounds of Proposition A, but its amendment does not demonstrate that Proposition A has more than one subject.

## IV.

Proposition A has one subject that is expressed clearly in the title. The trial court did not erroneously declare or apply the law. *See Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The judgment of the circuit court is affirmed.

All concur.