David OVERFELT, Appellant,

D.C., Inc., Amicus Curiae,

v.

Claire McCASKILL, State Auditor,
Matt Blunt, Secretary of
State, Respondents,

and

William Danforth, William S. Berkley,
and Citizens for A Healthy Missouri,
Intervenor–Respondents.

No. WD 61385.

Missouri Court of Appeals,
Western District.

Aug. 13, 2002.

Marc H. Ellinger, Jefferson City, for appellant.

Alana M. Barragan–Scott, Jefferson City, for respondents McCaskill and Blunt.

Alex Bartlett, Jefferson City, for respondent Danforth.

Katherine S. Walsh, Chesterfield, for Amicus Curiae D.C., Inc.

David A. Linehan, Kansas City, for Amicus Curiae Washington Legal Foundation.

Before JOSEPH M. ELLIS, Chief Judge, PATRICIA BRECKENRIDGE, Judge and VICTOR C. HOWARD, Judge.

JOSEPH M. ELLIS, Chief Judge.

On March 1, 2002, the Missouri Secretary of State received eight proposed initiative petitions related to state taxes on tobacco products. One of those petitions, referred to by the parties and hereinafter by this court as the "Version 2 Initiative Petition," proposed an increase in the state cigarette excise tax of two and three-quarters cents per cigarette[1] and an increase in the state tax on other tobacco products from ten percent to thirty percent.

Pursuant to § 116.175,[2] the Secretary of State forwarded the Version 2 Initiative Petition to the Missouri State Auditor for preparation of a fiscal note and a fiscal note summary. In order to prepare the fiscal note, the State Auditor obtained information from the Missouri Department of Revenue. The Department of Revenue informed the State Auditor that approximately 593 million packs of cigarettes were being sold per year in the State, that most packs of cigarettes contain twenty cigarettes, and that the proposed increase in taxes would generate an additional $362,150,000 annually based upon the sale of that same number of packs of cigarettes. The Department of Revenue also took the amount reflected in manufacturers' invoices for other tobacco products and calculated that a twenty-percent increase in taxes on those same sales would generate an addition $17,504,000. The State Auditor did not contact or receive information from any other state agency or any local governments. After preparing the fiscal note, the State Auditor drafted a fiscal note summary that stated, "An additional tax of two and three-quarters cents per cigarette and an additional tax of twenty percent of the manufacturer's invoice price for tobacco products other than cigarettes would generate net annual state revenues of approximately $342,636,000; local fiscal impact, if any, is unknown."

On March 14, 2002, pursuant to § 116.175.2, the State Auditor submitted the fiscal note and fiscal note summary to the Missouri Attorney General who approved them as to their form. On March 27, 2002, as required by § 116.160.1, the Secretary of State submitted a proposed summary statement for the Version 2 Initiative Petition to the Attorney General. The Attorney General approved the legal content and form of the proposed summary statement. On March 29, 2002, the Secretary of State certified the official ballot title for the Version 2 Initiative Petition, as contemplated by § 116.180.

On April 8, 2002, Appellant David Overfelt filed a petition in the Circuit Court of Cole County challenging the fiscal note and the official ballot title, which is comprised of the summary statement and the fiscal note summary. Count I of the petition challenged the fiscal note, Count II challenged the summary statement, and Count III challenged the fiscal note summary. On April 24, 2002, the State Auditor and Secretary of State filed their answer to the petition. On April 25, 2002, William Danforth, William S. Berkley, and the Citizens for a Healthy Missouri filed a motion to intervene as proponents of the Version 2 Initiative Petition, and that motion was subsequently granted.

---

1. This would result in the tax on an average pack of cigarettes increasing from seventeen cents per pack to seventy-two cents per pack.

2. All statutory references are to RSMo 2000 unless otherwise noted.

A hearing was held on April 30, 2002, at which time stipulated facts and exhibits were submitted to the court. On May 1, 2002, the trial court entered its Final Judgment and Order ruling in favor of the Defendants and against Mr. Overfelt on all three counts. Mr. Overfelt brings three points on appeal from that judgment.

■ The proper standard of review for this bench tried case based on stipulated facts is set forth in *Schroeder v. Horack*, 592 S.W.2d 742, 744 (Mo. banc 1979). Because it was submitted on stipulated facts, "and contrary to counsel's assertion that our review is governed by *Murphy v. Carron*, 536 S.W.2d 30, 31 (Mo. banc 1976), the only question before this court is whether the trial court drew the proper legal conclusions from the facts stipulated." *Schroeder*, 592 S.W.2d at 744 (*quoting Drysdale v. Cornerstone Bank*, 562 S.W.2d 182, 183 (Mo.App. S.D.1978)).

In his first point, Appellant contends that the trial court erred in failing to remand the fiscal note to the State Auditor to fulfill her duty under § 116.175 to analyze the fiscal impact of the initiative petition on local governments. In his second point, Appellant asserts that the trial court erred in failing to remand the fiscal note summary to the State Auditor because it reflects the alleged deficiencies contained in the fiscal note. Appellant argues that the trial court had the authority to remand these matters to the State Auditor under Chapter 116 and the common law.

Section 116.175 states, in relevant part:
1. Except as provided in section 116.155, upon receipt from the secretary of state's office of any petition sample sheet, joint resolution or bill, the auditor shall assess the fiscal impact of the proposed measure. The state auditor may consult with the state departments, local government entities, the general assembly and others with knowledge pertinent

to the cost of the proposal. Proponents or opponents of any proposed measure may submit to the state auditor a proposed statement of fiscal impact estimating the cost of the proposal in a manner consistent with the standards of the governmental accounting standards board and section 23.140, RSMo, provided that all such proposals are received by the state auditor within ten days of his or her receipt of the proposed measure from the secretary of state.

2. Within twenty days of receipt of a petition sample sheet, joint resolution or bill from the secretary of state, the state auditor shall prepare a fiscal note and a fiscal note summary for the proposed measure and forward both to the attorney general.

3. **The fiscal note and fiscal note summary shall state the measure's estimated cost or savings, if any, to state or local governmental entities.** The fiscal note summary shall contain no more than fifty words, excluding articles, which shall summarize the fiscal note in language neither argumentative nor likely to create prejudice either for or against the proposed measure.

(emphasis added). Accordingly, § 116.175 charges the State Auditor with estimating the costs and/or savings associated with the proposed measure to state or local governmental entities in the fiscal note and the fiscal note summary.

The stipulation filed by the parties recited, as explained previously, that the State Auditor obtained information from the Missouri Department of Revenue regarding how many packs of cigarettes and other tobacco products were sold in the State and estimating revenues from additional taxation. The information submitted by the Department of Revenue did not include data relating to local governments.

The State Auditor utilized this information to prepare the fiscal note and fiscal summary. The stipulation also includes the following factual statement: "The State Auditor did not contact or receive or review information from any state agency, other than than the Department of Revenue, or any local government in Missouri in the course of preparing the fiscal note." Finally, the fiscal note itself makes no mention of the impact on local governments other than the statement in the fiscal note summary that "local fiscal impact, if any, is unknown."

■ From these facts, and without more, Appellant argues that the State Auditor did not address the fiscal impact on local governments, as required by § 116.175, and, therefore, the trial court erred in failing to remand the fiscal note and fiscal note summary to the State Auditor. We reject Appellant's contention because the remedy he sought is not authorized by the statute and because he failed to carry his burden to present sufficient evidence to permit the trial court to grant the remedy provided for in the statute.

■ Appellant correctly points out that "[w]here a statute creates a right, but is silent as to the remedy, the party entitled to the right may resort to any common law action which would afford him adequate and appropriate means of redress." *Wear v. Walker*, 800 S.W.2d 99, 103 (Mo.App. S.D.1990). However, this principle is not applicable where, as here, the statutory scheme expressly provides a remedy.

Appellant's challenge to the fiscal note was brought under § 116.190. "[Section] 116.190 provides a means for citizens wishing to challenge the language of the official ballot title or fiscal note to bring an action

in circuit court." *Bergman v. Mills*, 988 S.W.2d 84, 90 n. 4 (Mo.App. W.D.1999). In relevant part, Section 116.190 states:

1. Any citizen who wishes to challenge the official ballot title or the fiscal note prepared for a . . . statutory initiative or referendum measure, may bring an action in the circuit court of Cole County. The action must be brought within ten days after the official ballot title is certified by the secretary of state in accordance with the provisions of this chapter.

2. The secretary of state shall be named as a party defendant in any action challenging the official ballot title prepared by the secretary of state. When the action challenges the fiscal note or fiscal note summary prepared by the auditor, the state auditor shall also be named as a party defendant.

\* \* \*

3. The petition shall state the reason or reasons why the official ballot title is insufficient or unfair and shall request a different ballot title.

4. The action shall be placed at the top of the civil docket. The court shall consider the petition, hear arguments, and in its decision certify the official ballot title to the secretary of state. . . .

■ Section 116.190 allows the trial court to correct any insufficient or unfair language of the ballot title and to certify the corrected official ballot title to the secretary of state. This is the exclusive remedy allowed under the statute. "If the ballot title challenge is timely filed, the court is authorized to do no more than certify a correct ballot title." [3] *Missourians to Protect the Initiative Process v. Blunt*, 799 S.W.2d 824, 829 (Mo. banc

---

**3.** In carving out this remedy, the legislature apparently weighed the interests of the citizenry in getting ballot initiatives on the ballot

in a timely fashion against the interests of those opposing the language to be utilized on the official ballot title.

1990). Accordingly, the trial court cannot be deemed to have erred in refusing to grant an alternative remedy not provided for in the statute. Furthermore, Appellant failed to present sufficient evidence from which the trial court could have granted the remedy allowed under § 116.190. Under that section, the party challenging the language of the fiscal note or ballot title bears the burden of establishing that it was insufficient or unfair. *Bergman*, 988 S.W.2d at 92. In so doing, the challenging party bears the burden of establishing what the fiscal note or official ballot title should have stated and providing the trial court with evidentiary support for the proposed language. If the challenging party fails to meet this requirement, the trial court has no evidentiary basis from which to rewrite or otherwise correct the language of the ballot title, the only remedy authorized by § 116.190. *Missourians to Protect the Initiative Process*, 799 S.W.2d at 829. Thus, where a party challenges the sufficiency or fairness of the fiscal note summary or the fiscal note on which it was based, the challenging party bears the burden of presenting sufficient evidence to allow the trial court to determine what the fiscal note should have said and to draft a different fiscal note summary.

In the case at bar, in order to obtain the available relief, Appellant was required to provide the trial court with sufficient evidence of what the fiscal note and/or ballot title should have stated to allow the trial court to correct any insufficient or unfair language in the ballot title and certify it to the Secretary of State.[4] Appellant failed to establish at trial what, if anything, the fiscal note and fiscal note summary should have said about the impact on local gov-

ernmental entities. Indeed, it is possible that even the most exhaustive of efforts at estimating the impact that the ballot initiative would have on local governmental entities would have resulted in a conclusion that the impact could not be reasonably estimated and was, therefore, unknown. Appellant failed to show that a better estimate was available and to establish what that estimate should have been. Without such evidence, Appellant could not establish that the language was insufficient or unfair, and the trial court lacked a sufficient evidentiary basis from which to determine what the fiscal note should have said and to draft a corrected fiscal note summary for the official ballot title.

Under § 116.190, following trial, the trial court was required to certify the official ballot title to the Secretary of State. Since the trial court was not provided with sufficient evidence to allow it to correct any deficiency in the fiscal note and to make any resultant changes to the fiscal note summary in the ballot title, it had no option other than to certify the existing ballot title. The trial court did not err in ruling that Appellant was not entitled to any relief under § 116.190 with respect to either the fiscal note or fiscal note summary. Points denied.

■ In his final point, Appellant contends the trial court erred in finding that the summary statement contained in the official ballot title was sufficient and fair. He argues that the summary statement is insufficient and unfair because it fails to adequately convey where the money generated from the tax would be going. Appellant also claims that the summary statement unfairly implies that new services will be created for Missouri citizens when only a small percentage of the revenue

---

4. Section 116.175 also provided Appellants with an opportunity to present a proposed statement of fiscal impact to the State Auditor prior to her preparation of the fiscal note and thereby aid her in the process. Appellants did not take advantage of this opportunity.

generated by the tax would go to new services.

Under § 116.334, the Secretary of State is charged with preparing a summary statement of the measure not to exceed one hundred words. "This statement shall be in the form of a question using language neither intentionally argumentative nor likely to create prejudice either for or against the proposed measure." § 116.334.1.

With regard to the Version 2 Ballot Initiative, the Secretary of State drafted the following summary statement:

> Shall Missouri law be amended to impose an additional tax of 2.75 cents per cigarette (fifty-five cents per pack) and twenty percent on other tobacco products, with the new revenues placed into a Healthy Families Trust Fund to be used only for the following purposes: hospital trauma care and emergency preparedness; health care treatment and access, including prescription drug assistance for seniors and health care initiatives for low income citizens, women, minorities and children; life sciences research, including medical research and the proper administration of funds for such research; smoking prevention; and grants for early childhood care and education?

The trial court found that this summary statement was sufficient and fair.

Appellant contends that the summary statement should have informed voters that many of these programs were currently funded by the general revenue fund and that approval of the measure would free up funds in the general revenue fund for other purposes. He also claims that the summary statement should have explained the creation of a Life Sciences Research Board.

When a party challenges the language of the summary statement, "[t]he burden is on the opponents of the language to show that the language was insufficient and unfair." *Hancock v. Secretary of State,* 885 S.W.2d 42, 49 (Mo.App. W.D. 1994). Appellant failed to establish that the language utilized in the summary statement was insufficient or unfair. While Appellant contends that the summary should have set forth where the revenue generated by the proposed tax would be used in greater specificity along with setting forth coincidental effects of the measure on the general fund, the summary statement drafted by the Secretary of State could not exceed one hundred words. "[E]ven if the language proposed by [Appellant] is more specific, and even if that level of specificity might be preferable, whether the summary statement prepared by the Secretary of State is the best language for describing the referendum is not the test." *Bergman,* 988 S.W.2d at 92.

The ballot title is sufficient and fair if it "makes the subject evident with sufficient clearness to give notice of the purpose to those interested or affected by the proposal." *United Gamefowl Breeders Ass'n of Mo. v. Nixon,* 19 S.W.3d 137, 140 (Mo. banc 2000). "The important test is whether the language fairly and impartially summarizes the purposes of the measure, so that the voters will not be deceived or misled." *Bergman,* 988 S.W.2d at 92.

The summary statement was neither insufficient nor unfair based on the record before us. Contrary to Appellant's assertions, the summary statement does not appear to be either deceptive or misleading. The summary statement sets forth the proposed tax increase and describes the types of programs that would be funded by the revenue generated by the

tax increase.[5] In so doing, the summary statement reaches the hundred-word limit. While there may be aspects of the ballot initiative or consequences resulting therefrom that Appellant would have liked to have seen included in the summary statement, their exclusion does not render the summary statement either insufficient or unfair. Within the hundred-word limitation, the ballot title is not required to set out the details of the proposal or resolve every peripheral question related thereto. *United Gamefowl Breeders Ass'n of Mo.,* 19 S.W.3d at 141. The summary statement is set forth in language that does not appear likely to deceive or mislead voters or any other interested parties as to the purpose of the measure. Point denied.

The judgment is affirmed.

All concur.

5. While Appellant attempts to argue to the contrary, the summary statement does not imply that the revenue generated will be used to provide new and different services to the citizens of the State of Missouri rather than funding already existing programs and services.