MISSOURI MUNICIPAL LEAGUE, et al., Appellant–Respondent,

v.

Robin CARNAHAN, et al., Respondent–Appellant,

Susan Montee and Ron Calzone, Respondents.

Nos. WD 71224, WD 71230.

Missouri Court of Appeals, Western District.

Jan. 5, 2010.

As Modified Feb. 2, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 2, 2010.

Joann T. Sandifer, Esq. and Robert L. Hess, II, Esq., Jefferson City, MO, for appellant.

Ron Calzone, Dixon, MO, pro se.

Jeremiah Morgan, Esq., Jefferson City, MO, for Respondent–Appellant.

Before Division One: LISA WHITE HARDWICK, Presiding Judge, JAMES M. SMART, JR. and CYNTHIA L. MARTIN, Judges.

LISA WHITE HARDWICK, Judge.

This case arises from four ballot initiatives, proposed by Ron Calzone, to amend the eminent domain provisions of the Missouri Constitution. The opponents to the initiatives, Missouri Municipal League, Eric Schneider, Michael Palmer, and Howard Wright (collectively "Plaintiffs"), appeal from the circuit court's ruling that the ballot summaries prepared by the Secretary of State and the fiscal note and fiscal note summaries prepared by the State Auditor were fair and sufficient, with the exception of one statement in a ballot summary that was deleted by the court. In a cross-appeal, the Secretary of State challenges the circuit court's certification of the revised ballot summary. For reasons explained herein, we reverse the ballot summary revision and affirm the circuit court's judgment in all other respects.

FACTUAL AND PROCEDURAL HISTORY

In December 2008, Ron Calzone submitted three initiative petitions to the Secre-

**576**

tary of State ("Secretary")[1] proposing amendments to article I, section 26 (compensation for taking by eminent domain), section 27 (acquisition of excess property by eminent domain), and a separate initiative petition proposing amendments section 28 (limitation on taking of private property for private use) and to article VI, section 21 (reclamation of blighted, substandard or insanitary areas) of the Missouri Constitution. The Article I ballot initiatives are essentially identical and state as follows:

The existing sections 26, 27 and 28 are set forth hereinafter with the new matter underlined and deleted matter in brackets, [thus].

Article I—Bill of Rights

*In order to assert our rights, acknowledge our duties, and proclaim the principles on which our government is founded, we declare:*

Section 26. [That private property shall not be taken or damaged for public use without just compensation.] *That the power of eminent domain shall be vested in no other than the state, including state entities expressly granted such power by this constitution, or in political subdivisions of the state whose officials are directly accountable to elected officials. That private property shall not be taken or damaged unless such taking is necessary for a public use and just compensation is rendered.* Such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be provided by law [;]. *The value of the property may be determined by, but is not limited to, appraisal methods typical to the ordinary course of business, and any evidence which would be considered by an appraiser in the ordinary course of business shall be relevant and admissible.* [and until the same] *Until a final legal determination of the legitimacy of the taking is established and until compensation shall be paid to the owner, or into court for the owner, they remain in such owner subject to the use for which it is taken.*

Section 27. That in such manner and under such limitations as may be provided by law, the state, or any county or city may acquire by eminent domain such property, or rights in property, in excess of that actually to be occupied by the public improvement or used in connection therewith, as may be reasonably necessary to effectuate the purposes intended, and may be vested with the fee simple title thereto, or the control of the use thereof, and may sell such excess property, *subject to the conditions set forth in subsection 4 of section 28 of this article,* with such restrictions as shall be appropriate to preserve the improvements made.

Section 28. *1.* That private property [shall not be] taken for private use *or private ownership or other private rights shall not be considered a public use, and no such takings shall occur* with or without compensation, unless by consent of the owner, except for private ways of necessity, and except for drains and ditches across the lands of others for agricultural and sanitary purposes, in the manner prescribed by law; and that when an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be judicially determined without regard to any legislative declaration that the use is public.

**1.** Robin Carnahan was the Secretary of State at the time the petitions were filed and at the time of this appeal.

*2. The use for property, or rights in property, shall be declared at the time that such property, or rights in property is taken by eminent domain. If that use is not earnestly or substantially pursued, the original owner, his heirs or assign shall, after five years but prior to any substantial accomplishments of the declared purpose, be allowed to claim the property back at a price no greater than was paid at the time of taking.*

*3. Subject to the conditions set forth in section 26 of this article, property may be taken for transportation or utility facilities or transmission systems used by a railroad, regulated utility or rural electric cooperative, however, the fee of property taken for such purposes without consent of the owner thereof shall remain in such owner, his heirs or assigns subject to the use for which it is taken.*

*4. Except as provided for in subsection 1 and subsection 3 of this section, property, a portion thereof, or rights in property taken by eminent domain may not be sold, transferred, leased or otherwise made available for use by a private entity within 20 years of such taking, unless the original owner, his heirs or assigns, have at the time of conveyance of such rights, been afforded the first opportunity to purchase such property back at a price no greater than was paid at the time of taking; however, interests less than fee title may be conveyed to a privately owned business for the purpose of providing products or services incidental to the function of a publicly owned facility.*

*5. The effective date of this amendment shall be November 3, A.D.2010, or as soon as is constitutionally permissible, and the provisions of Article I. Sec-*

*tions 26, 27 and 28 apply notwithstanding any application to the contrary of Article VI, Section 21 of this constitution.*

The existing section 21 is set forth hereinafter with the new matter underlined and deleted in brackets, [thus].

The Article IV ballot initiative states as follows:

Article VI—Local Government

Section 21. Laws may be enacted, and any city or county operating under a constitutional charter may enact ordinances *which protect property owners from public nuisances, as defined by the Common Law. In the event that an owner of property is found by a court of competent jurisdiction to be harboring such nuisance and has not fully abated the nuisance within a reasonable time after final judgment, any political subdivision of the state in which the nuisance exists may expend public funds to abate the nuisance and impose a lien on the offending property limited to an amount equal to the costs of the abatement and reasonable interest on such costs. Enforcement of the lien may be accomplished in the same manner as tax liens are enforced.* [, providing for the clearance, replanning, reconstruction, redevelopment and rehabilitation of blighted, substandard or insanitary areas, and for recreational and other facilities incidental or appurtenant thereto, and for taking or permitting the taking, by eminent domain, of property for such purposes, and when so taken the fee simple title to the property shall vest in the owner, who may sell or otherwise dispose of the property subject to such restrictions as may be deemed in the public interest.]

Pursuant to Section 116.175,[2] the Secretary forwarded the petitions to the State

---

**2.** All statutory references are to Revised Statutes of Missouri (2000), as updated in the

Auditor ("Auditor")[3] for preparation of a fiscal note and fiscal note summary. To obtain information for the fiscal note, the Auditor sent copies of the initiative proposals to various state and local government entities soliciting feedback on the potential costs or savings, if any, to each entity for the proposed changes.

A total of fifty-one state and local government entities responded with comments. Most indicated no fiscal impact, while some saw no "forseeable" impact, and others predicted no "significant impact" or were unable to determine any cost or savings. Five of the responding entities indicated the constitutional amendments could significantly increase costs or adversely impact projects and programs.[4]

The Auditor included a verbatim transcript of the comments from state and local governments in the "Assumptions" section of the fiscal notes. The Auditor prepared fiscal note summaries, which were approved by the Attorney General's Office, pursuant to Section 116.175, as to form and substance. The fiscal note summaries for the article I petitions state:

> The total cost or savings to the state or local governmental entities is unknown. Most state government entities estimate no costs, however, some state governmental entities may have indirect costs or unknown costs that exceed $100,000. Estimated costs, if any, to local governmental entities could be significant.

The fiscal note summary for the article VI petition states:

> The total cost or savings to state or local governmental entities is unknown. Most state governmental entities estimate no costs, however some state governmental entities may have unknown or indirect costs. Estimated costs, if any, to local governmental entities will vary, but could be significant.

Upon receipt of the fiscal notes and summaries, the Secretary prepared ballot summary statements as required by Section 116.334. The statements were approved by the Attorney General's Office as to legal content and form. As approved, the article I ballot summaries provided:

Shall the Missouri Constitution be amended to restrict the use of eminent domain by:

- Allowing only government entities to use eminent domain;
- Prohibiting its use for private purposes, with certain exceptions for utilities;
- Requiring that any taking of property be necessary for public use and that landowners receive just compensation;
- Requiring that the intended public use be declared at the time of the taking; and
- Permitting the original owners to repurchase the property if it is not so used within five years or if the proper-

Cumulative Supplement 2008.

3. Susan Montee was the State Auditor at the time the fiscal notes and fiscal note summaries were prepared and at the time of this appeal.

4. The City of St. Louis submitted a detailed statement of "significant" increases in cost and amounts of revenue that would be lost to the City under the proposals. The Missouri Department of Transportation saw significant delays in project delivery and property acqui-

sition costs under the article I proposed changes. The Hannibal School District felt the article VI provisions could have a cost impact of $500,000 if a new school was built where current structures were located. The Rockwood R–VI School District said potential costs were "impossible to calculate" but could be "astronomical." The Department of Conservation did not expect any immediate fiscal impact but saw potential for an adverse impact on programs and activities from the article VI provisions.

ty is offered to a private entity within 20 years?

The approved article VI summary provided:

Shall the Missouri Constitution be amended to change the power of the General Assembly and constitutionally chartered cities or counties to:

- Prohibit the use of eminent domain to acquire and resell property found to be blighted, substandard or unsanitary for the purpose of clearance, redevelopment or rehabilitation; and

- Allow them to require owners of property found to be a public nuisance to abate or clean up the nuisance and, if the property owner fails to do so in a reasonable time, allow the local government to pay for the abatement and impose a lien to recover the cost?

Several opponents of the ballot initiatives filed two lawsuits challenging the summary statements, fiscal notes, and fiscal note summaries in the Circuit Court of Cole County. The court consolidated the actions involving the following Plaintiffs: the Missouri Municipal League, a not-for-profit association of 656 cities, towns, and villages which include 95% of the urban populations of Missouri; Eric Schneider, the Senior Director of Public Policy Research for the St. Louis Regional Chamber and Growth Association; Michael E. Palmer, Vice President of Commercial Operations for the Empire District Electrical Company; and Howard C. Wright, Jr. former City Attorney for the City of Springfield who continues as a consultant to the City. Ron Calzone sought leave and was permitted to intervene in the consolidated proceedings as an Intervenor–Defendant. After the parties stipulated to the facts and exhibits, the court held an evidentiary hearing.

The circuit court entered a judgment finding that the third bullet point of the article I summary statement was insuffi-

cient and unfair. The court found that this bullet point suggested the article I petition would add just compensation and public use restrictions to the constitution when those restrictions "are already part of the constitution." Accordingly, pursuant to Section 116.190.4, the court certified a summary statement for the article I petition omitting that bullet point:

Shall the Missouri Constitution be amended to restrict the use of eminent domain by:

- Allowing only government entities to use eminent domain;

- Prohibiting its use for private purposes, with certain exceptions for utilities;

- Requiring that the intended public use be declared at the time of the taking; and

- Permitting the original owners to repurchase the property if it is not so used within five years or if the property is offered to a private entity within 20 years?

The circuit court rejected the Plaintiffs' remaining challenges and affirmed the fiscal notes, fiscal note summaries, and the ballot summary statement for the article VI petition. The Plaintiffs appeal, and the Secretary of State has filed a cross-appeal.

## STANDARD OF REVIEW

As in any court-tried matter, we will sustain the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). When reviewing the arguments related to the process followed by the Auditor's office in preparing the fiscal notes, the facts are not in dispute. In those instances, the circuit court's legal conclusions and application of the law to the facts are reviewed without deference

to the circuit court's conclusions. *Coyle v. Dir. of Revenue*, 181 S.W.3d 62, 64 (Mo. banc 2005). Similarly, the parties argued the fairness and sufficiency of the Secretary's summary statements based on stipulated facts, joint exhibits, and undisputed facts. Thus, the only question on appeal is whether the trial court drew the proper legal conclusions, which we review *de novo*. *Overfelt v. McCaskill*, 81 S.W.3d 732, 735 (Mo.App.2002).

## ANALYSIS

### Fiscal Notes and Fiscal Note Summaries

In their first Point on appeal, the Plaintiffs argue that the circuit court erred in affirming the fiscal note and fiscal note summaries because the Auditor failed to assess the fiscal impact of the proposed measures which, they contend, is required by Section 116.175. They contend the Auditor failed to make an independent assessment of the feedback she received from the state and local government entities. The Auditor merely compiled and transcribed the comments into the "Assumptions" section of the fiscal notes, which, Plaintiffs assert, is insufficient. They also contend the circuit court erred as a matter of law in denying their challenges because they did not provide evidence of a "better estimate for the costs or savings of the petition" than the Auditor's fiscal notes and summaries.

Section 116.175 states in relevant part:

1. Except as provided in section 116.155, upon receipt from the secretary of state's office of any petition sample sheet, join resolution or bill, the auditor shall assess the fiscal impact of the proposed measure. The state auditor may consult with the state departments, local governmental entities, the general assembly and others with knowledge pertinent to the cost of the proposal. Proponents or opponents of any proposed measure may submit to the state auditor a proposed statement of fiscal impact estimating the cost of the proposal in a manner consistent with the standards of the governmental accounting standards board and section 23.140, RSMo, provided that all such proposals are received by the state auditor within ten days of his or her receipt of the proposed measure from the secretary of state.

2. Within twenty days of receipt of the petition sample sheet, joint resolution or bill from the secretary of state, the state auditor shall prepare a fiscal note and fiscal note summary for the proposed measure and forward both to the attorney general.

3. The fiscal note and fiscal note summary shall state the measure's estimated cost or savings, if any, to state or local governmental entities. The fiscal note summary shall contain no more than fifty words, excluding articles, which shall summarize the fiscal note in language neither argumentative nor likely to create prejudice either for or against the proposed measure.

4. The attorney general shall, within ten days of receipt of the fiscal note and fiscal note summary, approve the legal content and form of the fiscal note summary prepared by the state auditor and shall forward notice of approval to the state auditor.

5. If the attorney general or the circuit court of Cole County determines that the fiscal note or the fiscal note summary does not satisfy the requirements of this section, the fiscal note and the fiscal note summary shall be returned to the auditor for revision. A fiscal note or fiscal note

summary that does not satisfy the requirements of this section also shall not satisfy the requirements of Section 116.180.

Section 116.190 allows challenges to the fiscal note or fiscal note summary if those portions of the official ballot title are "insufficient or unfair." **Section 116.190.3.** Our courts have previously defined "insufficient" to mean " 'inadequate; especially lacking adequate power, capacity or competence.' " *Hancock v. Sec'y of State,* 885 S.W.2d 42, 49 (Mo.App.1994) (citation omitted). And the word "unfair" as being " 'marked by injustice, partiality, or deception.' " *Id.* (citation omitted). "Thus, the words insufficient and unfair ... mean to inadequately and with bias, prejudice, deception and/or favoritism state the [consequences of the initiative]." *Id.*

Plaintiffs argue the court erred in finding they should have provided a better estimate of costs or savings. They agree that this court in *Overfelt* held that citizens who challenge fiscal notes and fiscal note summaries for an initiative petition bear the burden of proving what the note or note summary should have said. 81 S.W.3d at 736–37. They argue, however, that the General Assembly disagreed with the heavy burden this decision assigned to ballot title challengers, and amended Sections 116.175 and 116.190 to clarify that challengers need only show that the Auditor has not discharged her statutory duties.

First, they assert Section 116.190.4 was amended to specifically authorize the circuit court to remand the fiscal note and fiscal note summary to the Auditor when they are unfair or insufficient. Because a remand is now available as an authorized remedy—which was not available in the statutes when the *Overfelt* court rendered its decision—Plaintiffs argue challengers no longer carry the burden of proving what the fiscal note or fiscal note summary should say.

Second, by adding a new subsection 5 to Section 116.175, the new language specifically states that the fiscal note or fiscal note summary cannot be certified as part of the official ballot title if it does not comply with Section 116.175. In other words, they argue, the General Assembly has expressly stated that any fiscal note or fiscal note summary that does not meet the requirements of Section 116.175 is unfair or insufficient. Under their argument, by relying upon the absence of a "better fiscal impact estimate" in denying Plaintiffs' challenge, the circuit court erred as a matter of law.

■ We disagree. The *Overfelt* case was clearly focused on the remedy then available under the statutory language. The appellant claimed error because the trial court had failed to remand the fiscal note and fiscal note summary to the Auditor; but at that time, the only remedy available if ballot titles were insufficient or unfair was for the trial court to correct the language. 81 S.W.3d at 736. The Auditor had sought fiscal impact information from a proposed tobacco tax increase only from the Department of Revenue. *Id.* at 735. The fiscal note made no mention of the impact on local governments other than the statement in the summary that "local fiscal impact, if any, is unknown." *Id.* at 736. The trial court was unable to give appellants the relief they sought because the statute did not provide for remand as a remedy. *Id.*

In *Overfelt,* the court was unable to ascertain whether the language was insufficient or unfair due to a lack of evidence in the record. *Id.* at 737. The court noted that the statute provided for those challenging the language of a fiscal note to submit a fiscal impact statement. *Id.* The appellants had not done so, but, as the

challenger to the proposed summary, they had the burden of demonstrating to the court why the language stating the impact on the local governments was "unknown" could or should have been different. *Id.* Consequently, this court determined the trial court had not erred in failing to provide relief.

■ The legislative changes made to Sections 116.175.5 and 116.190.4 now provide for the remedy that the *Overfelt* challengers sought, a remand to the Auditor. Nonetheless, such challengers still bear the burden of demonstrating in the first instance that the Auditor's fiscal note and fiscal note summary are insufficient or unfair. *Cures Without Cloning v. Pund,* 259 S.W.3d 76, 81 (Mo.App.2008).

The heart of the Plaintiffs' claim is that the Auditor failed to independently "assess" the fiscal impact of the proposed measures, which, they contend, is mandated by Section 116.175. Rather, the Auditor merely compiled comments from other governmental entities and transcribed those comments verbatim into the "Assumptions" section of the fiscal notes. The fiscal notes, they argue, contain only assumptions and no conclusions. The Auditor's Chief of Staff testified that their review of the collected comments is limited to checking for typos, overall reasonableness, and a reasonable relationship between the agency comment and the proposal. Based on these practices, Plaintiffs argue that such scrivener's work does not constitute "assess[ing] the fiscal impact" of a proposed measure. **Section 116.175.1.** There is no section of the fiscal note in which the Auditor sets forth the conclusions drawn from the information obtained. There is nothing, the Plaintiffs assert, that informs the public which comments the Auditor has chosen to credit and adopt as her own.

Section 116.175.1 specifically authorized the Auditor to send inquiries to those state and local government entities having knowledge pertinent to the proposed legislation. The Auditor then reviewed the responses for reasonableness and completeness. The Auditor's Chief of Staff testified it was their practice to evaluate the responses and to obtain clarification from the entity if the information was unclear. If they found a response to be unreasonable, that affected how much weight was given to the statement in preparing the summary. The plain language of the statute does not mandate that the Auditor adopt another method of independently assessing the costs or saving of the proposal. We conclude the Auditor's current process is adequate to satisfy the statutory requirement.

The purpose of the fiscal note is to inform the public of the fiscal consequences of the proposed measure. If the note conveys the fiscal consequences to the public adequately in "language neither argumentative nor likely to create prejudice either for or against the proposed measure," then the Auditor has met her burden under the statute. **Section 116.175.3.** There is nothing in the record indicating the public will be misinformed of the fiscal impact of the article I and article VI petitions. Without evidence to suggest otherwise, Point I is denied.

■ In Point II, Plaintiffs contend the circuit court erred in affirming the fiscal note summaries because they suggest a potential savings to state and local government agencies when no agency reported that such a savings would result. They argue that the "Assumptions" sections do not show any state or local agency estimating any savings from the ballot initiative or providing any rationale for how the measure might save them money.

The first sentence of each fiscal note summary states, "The total cost or savings to state or local governmental entities is

unknown." By far the vast majority of the entities indicated "no fiscal impact" from the proposed measures, and the summary so indicates. A few of the entities did, in fact, indicate that the fiscal impact (i.e. cost or savings) of the measures was unknown or provided conditional responses. When entities made conditional statements such as "no direct forseeable fiscal impact," the Auditor's Chief of Staff explained that they interpreted such responses to be an indication that there could be indirect cost or savings at some point in time to that agency. Reviewing the comments in totality, we conclude the first sentence of the summaries is an accurate and fair indication to the voters that the total cost or savings of the proposal is unknown. Further, the "or" language of the sentence is quoted from the statute and does not necessarily convey that any savings are anticipated or estimated.

We also note that the remainder of the summary indicates there could be significant costs to local entities. All of the details of a fiscal note need not be set out in a summary consisting of a mere fifty words. *Bergman v. Mills*, 988 S.W.2d 84, 92 (Mo.App.1999). Further, a fiscal note summary is not judged on whether it is the "best" language, only whether it is fair. *Hancock*, 885 S.W.2d at 49. To have informed the public, as Plaintiffs suggest, that the petitions would *only* result in *costs* for the state and local entities, would have been a misstatement of the record. Point II is denied.

### Summary Statements

### Article VI

Plaintiffs also take issue with the summary statements prepared by the Secretary of State. In their third point on appeal, Plaintiffs contend the summary statement for the article VI petition is unfair and insufficient and will prejudice the public in favor of the proposal. The ballot summary for the article VI petition states:

> Shall the Missouri Constitution be amended to change the power of the General Assembly and constitutionally chartered cities or counties to:
> - Prohibit the use of eminent domain to acquire and resell property found to be blighted, substandard or unsanitary for the purpose of clearance, redevelopment or rehabilitation; and
> - Allow them to require owners of property found to be a public nuisance to abate or clean up the nuisance and, if the property owner fails to do so in a reasonable time, allow the local government to pay for the abatement and impose a lien to recover the cost?

In reviewing the sufficiency and fairness of a summary statement, the critical test is "whether the language fairly and impartially summarizes the purposes of the measure, so that voters will not be deceived or misled." *Bergman*, 988 S.W.2d at 92. A ballot title is sufficient and fair if it "makes the subject evident with sufficient clearness to give notice of the purpose to those interested or affected by the proposal." *United Gamefowl Breeders Ass'n of Mo. v. Nixon*, 19 S.W.3d 137, 140 (Mo.banc 2000).

Plaintiffs argue the summary statement is insufficient and unfair for two reasons:

(1) It incorrectly states that it is granting powers to "allow" the General Assembly and constitutionally chartered cities and counties to abate public nuisances when the effect of the proposal is to limit the power of all political subdivisions to abate public nuisances; and

(2) The statement incorrectly states only that the proposal will prohibit the use of eminent domain to acquire and resell

blighted, substandard, or unsanitary property for redevelopment purposes when the proposal will also deprive the General Assembly and constitutionally chartered cities and counties of the power to authorize other actions to further that goal.

Plaintiffs contend the "allow" language is misleading because the General Assembly and constitutionally chartered cities or counties already have the power to abate nuisances, and the power to take action under their police powers—including the expenditure of public funds—to abate and clean up nuisances within their boundaries. The amendment, they argue, adds a significant limitation on this authority by requiring cities to file suit, obtain a final judgment, and wait a "reasonable time" after that final judgment for the owner to abate the nuisance, before the city can expend monies to itself abate.

Additionally, they argue the statement flatly misstates the entities that will be impacted by the amendment. They contend the summary says only the General Assembly and constitutional charter cities and counties will be affected, when the second and third sentences of the petition apply to "any political subdivision," which impacts all Missouri cities, counties, and other political subdivisions.

■ Addressing the latter argument first, the summary clearly indicates the power of the General Assembly and constitutionally chartered cities and counties will be changed. There is no claim of exclusive application. Non-charter cities derive their powers through acts of the General Assembly, so the voters are on notice that the amendment has the potential to affect people living in places other than chartered cities and counties.

■ The "allow" language to which Plaintiffs refer appears in the second bullet point. Their argument as to its significance ignores the first bullet point, which makes it clear the change in power will be to place limits on the use of eminent domain to acquire and resell blighted, substandard, or unsanitary property for purposes of clearance, redevelopment, or rehabilitation. The summary's second bullet point goes on to articulate what process will be allowed to abate nuisances. We think this language accurately reflects the legal and probable effects of the ballot initiative.

■ Finally, Plaintiffs argue the summary statement's description of the language deleted by the amendment is also defective as it would remove the express authority of the General Assembly and constitutionally chartered cities and counties to enact laws and ordinances. They contend the summary only addresses prohibition on the use of eminent domain, when the proposed changes would also affect their abilities to enact laws and ordinances that adopt solutions not involving eminent domain.

Plaintiffs' argument is directly contrary to the first sentence of the initiative petition, which states: "Laws may be enacted, and any city or county operating under a constitutional charter may enact ordinances which protect property owners from public nuisances, as defined by the Common Law." The proposal does not prevent authorities from abating a nuisance in ways other than through the use of eminent domain. It does impose due process provisions before public monies could be expended and a lien imposed on the offending property. Those provisions are set forth in the second bullet point of the summary.

■ As noted, not every detail of a proposal needs to be set out within the confines of the 100 word limit for summary statements. *Gamefowl Breeders*, 19 S.W.3d at 141. We agree with the circuit court that Plaintiffs' argument pushes the court toward a review of the merits of the

initiative itself-a task which is beyond the scope of review as mandated by Section 116.190. *Missourians Against Human Cloning v. Carnahan,* 190 S.W.3d 451, 457 (Mo.App.2006). Point III is denied.

### Article I

In their fourth and final point on appeal, Plaintiffs assert error in certifying the revised summary statement for the article I petition because it will prejudice the public in favor of the petition. The revised summary statement provided:

Shall the Missouri Constitution be amended to restrict the use of eminent domain by:

- Allowing only government entities to use eminent domain;
- Prohibiting its use for private purposes, with certain exceptions;
- Requiring that the intended public use be declared at the time of the taking; and
- Permitting the original owners to repurchase the property if it is not so used within five years or if the property is offered to a private entity within twenty years?

Plaintiffs argue the second and third bullet points are improper because they reference restrictions that are already included in the Missouri Constitution. Specifically, they contend article I, section 26 currently requires that all takings must be for public use; and, similarly, article I, section 28 provides: "That private property shall not be taken for private use with or without compensation." Citing *Centene Plaza Redevelopment Corp. v. Mint Properties.,* 225 S.W.3d 431, 435 n. 3 (Mo.banc 2007), Plaintiffs point to the long standing history that:

Article I, section 28 of the Missouri Constitution prohibits the taking of private property for uses that are not public and ensures judicial review of whether the use is public without regard to any legis-lative declaration that such use is public. These requirements prevent a condemning authority from forcing the transfer of private property from its owner primarily for benefit of another private party.

Plaintiffs complain that the summary statement will seriously mislead and prejudice voters and petition signers by stating that the constitutional amendments will adopt these fundamental property rights, when they are already in the constitution. In fact, they argue, the existing provisions are stronger than the new ones because they require a declaration and adjudication of public use as a prerequisite to approval of condemnation and before the process can move forward, while the proposed changes merely require a declaration after approval of the condemnation petition at the end of the process when the condemnor is taking title to the property.

The Secretary argues that while the Missouri Constitution currently prohibits the taking of private property for private use, the proposed ballot initiatives affect a substantial change in what constitutes a public use that is best left to voters as a restriction on "private purposes." Further, there are new exceptions set forth for utilities.

The Intervenor argues there are at least five clauses in the proposed amendment that would result in new restrictions of private use of eminent domain: (1) the inclusion of "private ownership or other private rights" with the existing "private use" clause; (2) tightening the definition of "public use"; (3) the retention of fee title by the property owner when rights to use are taken on behalf of a regulated utility; (4) the requirement that property stay in public use and ownership for twenty years or be returned to the original owner; and (5) the "notwithstanding ... Article VI, Section 21" clause which, he contends, ren-

ders any private use application of that article null and void.

Intervenor and the Secretary also argue that while there is a common practice in some jurisdictions to declare the public use at the time of taking, it is not an explicit constitutional requirement. The proposed amendment changes the constitution to include such an explicit requirement. Further, the "intended public use be declared" language in the third bullet point provides context for the "so used" language of bullet point four. The proposal's "repurchase" provision is clearly new and would only have meaning if the "intended public use" is declared at the time of taking.

■ The trial court found, and we agree, that the bullet points at issue correctly explain how the new petitions would change the Missouri Constitution by restricting the power of eminent domain to State entities, expanding the prohibition on private use takings, and adopting other procedural changes to the condemnation process. To be fair and impartial, the summary should describe those changes.

■ The Plaintiffs' final complaint is not about what the Secretary included in the summary but what she did not include. Plaintiffs claim the summary fails to identify the central purpose of the proposal which is to: (1) prohibit uses currently deemed public; (2) eliminate the ability of private utility companies to condemn property; and (3) increase the costs and timeframes associated with the condemnation process in Missouri.

Within the 100 word limitation, the ballot title is not required to set out the details of the proposal or resolve every peripheral question related to it. *Gamefowl Breeders*, 19 S.W.3d at 141. Given a greater word limit, undoubtedly the Secretary could have provided more detail. The very first bullet point of the summary states the constitution will be changed to allow only government entities to use emi-

nent domain. This gives clear notice that private entities will not be allowed their own eminent domain power. As previously discussed, the "private purposes" language is broad enough to alert the public to an expanded definition of public use. As to the potential effect on voters, such allegations are conjecture at this point and certainly not appropriate for a 100–word ballot title summary. The summary is set forth in language that does not appear likely to deceive or mislead voters or any other interested persons as to the purpose of the measure. Point IV is denied.

### Cross Appeal

In her sole point on appeal, the Secretary contends the circuit court erred in revising the original summary statement for the article I initiative petition. The original summary had five bullet points, but the circuit court struck the third point as insufficient and unfair:

Shall the Missouri Constitution be amended to restrict the use of eminent domain by:

- Allowing only government entities to use eminent domain;
- Prohibiting its use for private purposes, with certain exceptions for utilities;
- [Requiring that any taking of property be necessary for public use and that landowners receive just compensation;]
- Requiring that the intended public use be declared at the time of the taking; and
- Permitting the original owners to repurchase the property if it is not so used within five years or if the property is offered to a private entity within 20 years.

The circuit court found the summary statement to be unfair and insufficient because

"the third bullet point suggests that restrictions on takings without just compensation or without a public use would be added to the constitution. Those provisions are already part of the constitution. Mo. Const. art I section 26 ("That private property shall not be taken or damaged for public use without just compensation"). They have been incorporated in Missouri's current constitution for more than 60 years. The public use and just compensation requirements were included in Missouri's first constitution in 1820. Mo. Const. art XIII, section 7 (1820); U.S. Const. amend. V (adopted in 1791). Public use and just compensation are not changes that will be effected by passage of the petition."

The Secretary contends the circuit court's reasoning is erroneous because the ballot initiatives set forth a fundamental change in requiring "necessity" for the use of eminent domain. The petition states: "That private property shall not be taken or damaged unless such taking is necessary for public use and just compensation is rendered." The Secretary argues the language of the original third bullet point properly summarizes one of the effects of the proposed amendment by identifying the new requirement of necessity for uses of eminent domain, particularly as it relates to just compensation.

The Secretary contends that the proposed change mandating that "necessity" be required for governmental entities to use the power of eminent domain will likely have an impact on areas where just compensation is currently not required. She cites as an example those historic situations in which public necessity was allowed for a taking or damage of private property, in some instances, without just compensation. *Surocco v. Geary,* 3 Cal. 69 (1853) (house was destroyed to create a firebreak to protect the community and public necessity allowed for this taking without just compensation).

She argues the only requirement that has been constitutionally mandated is "just compensation." She asserts her summary statement addressed the new requirement in the context of the proposed new changes requiring "necessity" and prohibiting "private purposes" and was proper to complete the whole provision. Accordingly, she argues bullet point three was not simply a statement of existing law. The ballot initiative for article I proposes to amend the Constitution by requiring just compensation for any exercise of eminent domain or takings of private property, including those involving public necessity that historically did not require any compensation.

The Secretary further argues that even if the summary statement did restate, in part, existing law, that did not necessarily render her summary unfair or insufficient. In comparing her third bullet point language to the text of the proposed initiative, the summary tracks the language of the proposal and summarizes with sufficient clearness the changes proposed. Even if the language proposed by the trial court is more specific, or even preferable, she argues that does not establish that the third bullet point rendered the statement unfair or insufficient. *Bergman,* 988 S.W.2d at 92. The best language is not the test. *Id.* Citing the *Overfelt* case, the Secretary contends this court rejected a similar claim to that made by the Plaintiffs here. The *Overfelt* plaintiff argued the Secretary's summary was insufficient or unfair because it supposedly "implie[d] that new services will be created for Missouri citizens when only a small percentage of the revenue generated by the [proposed new] tax would go to new services." 81 S.W.3d at 737–38. The plaintiffs argued the statement should have informed voters that many of the programs were currently

funded. The court rejected these claims, holding that the summary was not rendered insufficient or unfair because some aspects or consequences of the initiative were not included. *Id.* at 739. Thus, she concludes, the fact that the summary statement recognizes an existing provision of the law does not make it unfair.

Plaintiffs argue Missouri law already recognizes "public necessity" as a distinct determination that must be made in addition to the public use determination. They cite *State ex rel. State Highway Commission v. Curtis,* 359 Mo. 402, 222 S.W.2d 64, 68 (1949) and *City of Kansas City v. Hon,* 972 S.W.2d 407, 409 (Mo.App. 1998), in support of their argument that "public necessity" is already a separate threshold determination that must be made before exercising the power of eminent domain. They argue the phrase "public necessity" does not appear anywhere in the article I petition.

 "When courts are called upon to intervene in the initiative process, they must act with restraint, trepidation, and a healthy suspicion of the partisan who would use the judiciary to prevent the initiative process from taking its course." *Missourians to Protect the Initiative Process v. Blunt,* 799 S.W.2d 824, 827 (Mo. banc 1990). The key sentence in the article I petition provides: "That private property shall not be taken or damaged unless such taking is necessary for a public use and just compensation is rendered." We agree the phrase "public necessity" does not appear in the article I petition, but the petition does articulate a need for any taking to be "necessary for a public use." We also note that the *Curtis* and *Hon* decisions and their progeny, were decided under statutes requiring that public necessity be demonstrated before the taking could occur. Plaintiffs have not cited any provision in the Constitution currently requiring a finding of "public necessity" to

justify *any* or all uses of eminent domain. For that reason, and to be consistent with our holdings in earlier portions of this opinion, we agree with the Secretary that the third bullet point, at least to the extent that it articulated the addition of a finding of necessity before taking, was not insufficient or unfair.

We agree with Plaintiffs and the circuit court, however, that the Missouri Constitution has historically and does currently require just compensation for takings. The fact that compensation may be required for public takings of necessity is not a result of a change in the compensation language but in the language of "necessity." The process for determining just compensation may be affected, but not the establishment of such compensation. Consequently, we reverse the circuit court's revision and modify the summary statement as follows:

Shall the Missouri Constitution be amended to restrict the use of eminent domain by:

- Allowing only government entities to use eminent domain;
- Prohibiting its use for private purposes, with certain exceptions for utilities
- Requiring that any taking of property be necessary for a public use;
- Requiring that the intended public use be declared at the time of the taking;
- Permitting the original owners to repurchase the property if it is not so used within five years or if the property is offered to a private entity within 20 years?

## CONCLUSION

We reverse the circuit court's revision of the ballot summary on the article I petition. Pursuant to Rule 84.14, we hereby

enter a judgment modifying the ballot summary as set forth herein and remand the modified ballot summary to the Secretary of State for certification. The appeal is affirmed in all other respects.

All Concur.