**CURES WITHOUT CLONING, Lori Buffa, M.D. and Chelsea Zimmerman, Appellant–Respondents,**

v.

**Robert E. PUND and Susan Baier, Respondent–Appellants;**

**Robin Carnahan, Secretary of State, Respondent–Appellant;**

**and Susan Montee, State Auditor, Defendant;**

**Kansas City Area Life Sciences Institute Association and Kansas City Area Life Sciences Institute, Amicus Curiae;**

**Robert P. George, D.Phil, J.D. and Maureen L. Condic, PH.D, Amicus Curiae.**

**Nos. WD 69376, WD 69390, WD 69391.**

Missouri Court of Appeals, Western District.

May 2, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 29, 2008.

Application for Transfer Denied Aug. 26, 2008.

Edward D. Greim, Kansas City, Randall M. England, Jefferson City, for Appellant/Respondent.

Ann K. Covington, George Bartlett, Karen K. Mitchell, James McAdams, Heidi Vollett, Jefferson City, David Welte, Kansas City, Kenneth Marshall, St. Louis, for Respondent/Appellant.

Joselyn Verschelden, Kansas City, for amicus curiae.

Before HOWARD, C.J., SMART and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

This case arises from a ballot initiative petition to amend the stem cell research provisions in the Missouri Constitution, as approved by Missouri voters in 2006. The proponents of the petition—Cures Without Cloning, Lori Buffa, and Chelsea Zimmerman (collectively "Plaintiffs")—appeal from the circuit court's dismissal of their constitutional claims against Robin Carnahan, in her official capacity as the Missouri Secretary of State ("Secretary"), in connection with the Secretary's preparation of a summary statement for the ballot initiative. In a cross-appeal, the Secretary and intervenors, Robert Pund and Susan Baier, challenge the circuit court's certification of a new summary statement based on the court's finding that the statement prepared by the Secretary was "insufficient and unfair" pursuant to Section 116.190.[1] We affirm in part, reverse in part, and remand for certification of a corrected summary statement.

### FACTUAL AND PROCEDURAL HISTORY

In November of 2006, Missouri voters approved a constitutional amendment referred to herein as the "Stem Cell Research and Cures Act." Mo. Const. Art. III, Section 38(d)1. The purpose of the amendment was to "ensure that Missouri patients have access to stem cell therapies and cures, that Missouri researchers can conduct stem cell research in the state,

---

1. All statutory references are to Missouri Revised Statutes 2000, except for those to Sections 116.025 and 116.190 and Missouri Constitution article III, section 38(d), which are to the Missouri Revised Statutes, Cumulative Supplement 2007.

and that all such research is conducted safely and ethically." To that end, the amendment provides that "any stem cell research permitted under federal law may be conducted in Missouri and any stem cell therapies and cures permitted under federal law may be provided to patients in Missouri" subject to certain limitations on such research enumerated in the Act. Mo. Const. art. III, section 38(d)2.

One of the stem cell research techniques allowed by the Act is somatic cell nuclear transfer ("SCNT"), a process that occurs when the nucleus of an unfertilized human egg is removed and replaced with the nucleus of an ordinary body cell (a somatic cell). *Missourians Against Human Cloning v. Carnahan,* 190 S.W.3d 451, 454 (Mo. App.2006) ("MAHC"). This transfer process creates a single cell that contains the 46 chromosomes of the body cell donor, which, with stimulation, can be coaxed to divide and eventually form a small cluster of cells known as a blastocyst. *Id.* From the blastocyst, researchers hope to extract undifferentiated stem cells and "employ this potential to mature into virtually any type of body cell to provide a repair system for the treatment of a wide variety of illnesses like Parkinson's or diabetes." *Id.*

A blastocyst produced through SCNT could, theoretically, be implanted into a womb and result in the development of a cloned human being. Such cloning is specifically prohibited by the Stem Cell Research and Cures Act, which states: "No person may clone or attempt to clone a human being." Mo. Const. art. III, §§ 38(d)2(1) and 38(d)3. "Clone or attempt to clone a human being" is defined in Section 38(d)6(2) as "to implant in a uterus or attempt to implant in a uterus anything other than the product of fertilization of an egg of a human female by a sperm of a human male for the purpose of initiating a pregnancy that could result in

the creation of a human fetus, or the birth of a human being." Thus, under current Missouri law, cloning would begin only upon implantation or attempted implantation of the stem cell in a uterus.

Plaintiffs believe that cloning begins before implantation when SCNT is used to produce a human embryo. Accordingly, they have proposed a new ballot initiative that would amend the definition of cloning in Section 38(d) to include the pre-implantation stage of SCNT and disallow public funding for research or experimentation related thereto. On September 4, 2007, the plaintiffs submitted the following initiative proposal to the Secretary for amendment of the Stem Cell Research and Cures Act:

> One new section is adopted by adding one new section to be known as Section 38(e) of Article III, to read as follows: **Section 38(e)** 1. It shall be unlawful to clone or attempt to clone a human being as that term is defined in subsection 2 of this section. Researchers may conduct stem cell research to discover cures for disease and develop stem cell therapies and cures, provided that the research complies with the limitations of this section and Section 38(d). The prohibitions of this section shall be in addition to the prohibitions of Section 38(d).
>
> 2. For all purposes within this article, "Clone or attempt to clone a human being" means create or attempt to create a human embryo at any stage, which shall include the one-cell stage onward, by means other than fertilization of a human egg by a human sperm.
>
> 3. No taxpayer dollars shall be expended: (1) to clone or attempt to clone a human being; or (2) to research or experiment using a human embryo, or any part of a human embryo, derived from cloning or attempting to clone a human being.

The Secretary is responsible for certifying the official ballot title of an initiative. § 116.180. The ballot title has two parts: a summary statement and a fiscal note summary.[2] § 116.010(4). Once an initiative proposal is submitted to the Secretary and the Attorney General and approved as to form, the Secretary must prepare a summary statement of the initiative, not to exceed 100 words. §§ 116.332, 116.334. The summary "shall be in the form of a question using language neither intentionally argumentative nor likely to create prejudice either for or against the proposed measure." § 166.334. The summary statement is then affixed to each page of the initiative petition before being circulated for signatures. § 116.180.

On October 10, 2007, the Secretary certified an official ballot title for the Plaintiffs' proposed initiative, including the following summary statement:

> Shall the Missouri Constitution be amended to repeal the current ban on human cloning or attempted cloning and to limit Missouri patients' access to stem cell research, therapies and cures approved by voters in November 2006 by:
> - redefining the ban on human cloning or attempted cloning to criminalize and impose civil penalties for some existing research, therapies and cures; and
> - prohibiting hospitals or other institutions from using public funds to conduct such research?

On October 19, 2007, the Plaintiffs filed a circuit court action challenging the ballot title and asserting various constitutional claims against the Secretary. § 116.190. The court allowed state taxpayers Robert Pund and Susan Baier to intervene in the

action in the action as defendants. Following a hearing on cross-motions for judgment on the pleadings, the court denied the Plaintiffs' challenge to the fiscal note portion of the ballot summary and ruled that the constitutional claims failed as a matter of law. The court sustained the Plaintiffs' challenge to the ballot title summary statement, finding it "insufficient and unfair" pursuant to Section 116.190. The court also certified to the Secretary the following summary statement for the ballot initiative:

> Should the Missouri Constitution be amended to change the definition of cloning and ban some of the research as approved by voters in November, 2006 by:
> - prohibiting human cloning that is conducted by creating a human embryo at any stage from the one-cell stage forward;
> - prohibiting the expenditure of taxpayer dollars on research or experimentation on human cloning;
> - allowing stem cell research, therapies and cures that complies (sic) with these prohibitions and the prohibitions of Section 38(d) of the Constitution?

This appeal and cross-appeal followed. For ease of discussion, we address the issues in the cross-appeal first.

### STANDARD OF REVIEW

In cases where the trial court does not hear evidence, it may hear argument and enter its judgment on the pleadings. Rule 55.27(b).[3] A grant of judgment on the pleadings is reviewed *de novo*, without deference to the trial court's ruling. *Millers Mut. Ins. Ass'n of Ill. v. Shell Oil Co.*, 959 S.W.2d 864, 866–67 (Mo.App.1997).

---

**2.** The fiscal note summary portion of the ballot title is not contested on appeal.

**3.** All rule citations are to Missouri Rules of Civil Procedure (2008) unless otherwise noted.

## ANALYSIS

### Cross–Appeal of the Summary Statement

The Secretary and Intervenors contend the circuit court erred in determining the original summary statement was insufficient and unfair. They further argue that even if the original summary statement did not comply with statutory mandates, the circuit court exceeded its authority in re-writing and certifying a new summary statement.

Under Section 116.334, the Secretary is charged with preparing a summary statement that is "neither intentionally argumentative nor likely to create prejudice either for or against the proposed measure." § 116.334.1. As opponents of the official ballot title, the Plaintiffs have the burden of showing why the Secretary's summary statement is "insufficient or unfair." § 116.190.3. Plaintiffs are entitled to a "different summary statement" if that requirement is met. *Id.*

■■■ In this context, our court has previously defined the meaning of "insufficient" and "unfair:"

Insufficient means "inadequate; especially lacking adequate power, capacity, or competence." The word "unfair" means to be "marked by injustice, partiality, or deception." Thus, the words insufficient and unfair ... mean to inadequately and with bias, prejudice, deception and/or favoritism state the [consequences of the initiative].

*Hancock v. Sec'y of State*, 885 S.W.2d 42, 49 (Mo.App.1994) (internal citations omitted). The critical test is "whether the language fairly and impartially summarizes the purposes of the measure so that voters will not be deceived or misled." *Bergman v. Mills*, 988 S.W.2d 84, 92 (Mo. App.1999). A ballot title is sufficient and fair if it "makes the subject evident with sufficient clearness to give notice of the purpose to those interested or affected by the proposal." *United Gamefowl Breeders Ass'n of Mo. v. Nixon*, 19 S.W.3d 137, 140 (Mo.banc 2000).

■■■ "When courts are called upon to intervene in the initiative process, they must act with restraint, trepidation, and a healthy suspicion of the partisan who would use the judiciary to prevent the initiative process from taking its course." *Missourians to Protect the Initiative Process v. Blunt*, 799 S.W.2d 824, 827 (Mo. banc 1990). "Courts are understandably reluctant to become involved in pre-election debates over initiative proposals. Courts do not sit in judgment on the wisdom or folly of proposals." *Id.* Before the people vote on an initiative, we consider only those threshold issues affecting the integrity of the election itself. *State ex rel. Trotter v. Cirtin*, 941 S.W.2d 498, 500 (Mo.banc 1997).

The Secretary's summary statement provides:

Shall the Missouri Constitution be amended to repeal the current ban on human cloning or attempted cloning to limit Missouri patients' access to stem cell research, therapies and cures approved by voters in November 2006 by:

- redefining the ban on human cloning to criminalize and impose civil penalties for some existing research, therapies and cures; and
- prohibiting hospitals or other institutions from using public funds to conduct such research?

■■■ Plaintiffs object to the Secretary's use of the word "repeal" in describing the effect of the amendment. They contend this language mischaracterizes the ballot initiative because the amendment would not repeal the ban on human cloning in Section 38(d) of the Stem Cell Research

and Cures Act; rather the amendment would *expand* the definition of cloning and, consequently, expand the ban on human cloning to the pre-implantation stage, which is not currently covered by the Act.

The Secretary responds that the new definition of cloning in the proposed Section 38(e) would replace the current definition, thereby effectively repealing it. We disagree, however, that replacing the definition of cloning equates to a *repeal of the ban on human cloning,* as reflected in the Secretary's statement.

Upon review of the Plaintiffs' initiative proposal, we find *no language to suggest* that it would repeal the ban on human cloning. The introductory language of the initiative states that it will amend the current Act by "adding" one new section "to be known as Section 38(e)." Next, subsection 1 of the amendment states that the prohibitions in 38(e) are "in addition to" those of 38(d). Finally, the definition language in subsection 2 ("which shall include the one-cell stage onward") indicates an intention to broaden the definition of cloning to an earlier stage of cell formation than currently prohibited. The collective language leaves little doubt that one of the purposes of the amendment is to expand the definition of cloning in order to increase the number of cases to which the ban on human cloning would apply.

■ In light of this purpose, Missouri voters are likely to be confused by a ballot title stating that the amendment would "repeal the ban on human cloning." It is incumbent upon the Secretary in the initiative process to promote an informed understanding of the probable effect of the proposed amendment. *Buchanan v. Kirkpatrick,* 615 S.W.2d 6, 11 (Mo.banc 1981). The Secretary's introductory language does not fairly summarize any goal or effect of the initiative proposal and is inadequate to give clear notice of its purpose.

Because this language is insufficient and unfair, a corrected summary statement is warranted. § 116.190.3. The matter can be easily clarified by substituting the word "change" for "repeal" so the summary would read, "Shall the Missouri Constitution be amended to change the current ban on human cloning . . ."

■ Plaintiffs have also argued that other language in the original summary statement is intentionally argumentative and likely to create prejudice against the amendment. We find that the remainder of the Secretary's summary statement is within acceptable boundaries and does not misinform or mislead the voters regarding the purpose, effects, or consequences of the amendment. The ballot initiative seeks to change the ban on cloning in such a way that would limit access in Missouri to currently legal stem cell research, cures, and therapies, impose civil and criminal penalties for conduct prohibited by the amendment, and prohibit the use of public funds for research currently permitted by the Act. As modified herein, the Secretary's summary statement adequately and fairly addresses these components of the amendment. Accordingly, the circuit court erred in rejecting the entire summary statement, instead of merely correcting any language that was unfair or insufficient.

■ The Secretary disputes the court's authority to correct or modify the original summary statement. She points out that her office has sole authority to "prepare" a summary statement for a ballot initiative under Section 116.334.1. If the summary statement is challenged, the circuit court "shall consider the petition, hear arguments, and in its decision certify the official ballot title to the Secretary of State." § 116.190.4. Because Chapter 116 gives responsibility to the executive branch for

preparation of the summary statement, the Secretary contends the circuit court cannot rewrite or modify any portion of the statement without violating the separation of powers doctrine in Article II, Section 1 of the Missouri Constitution. The Secretary asserts the court's authority, under Section 116.190.4, is limited to certifying those portions of the summary it deems fair and sufficient, with a remand to the Secretary to perform her executive duty of rewriting those portions that cannot be certified.

Contrary to the Secretary's interpretation, Missouri courts have recognized that "Section 116.190 allows the trial court to correct any insufficient or unfair language of the ballot title and to certify the corrected official ballot title to the secretary of state." *Overfelt v. McCaskill,* 81 S.W.3d 732, 736 (Mo.App.2002); *Blunt,* 799 S.W.2d at 829 ("If the ballot title challenge is timely filed, the court is authorized to do no more than certify a correct ballot title."). These decisions are consistent with Section 116.190.3, which allows a petitioner in circuit court to request a "different summary statement" if the Secretary's ballot title is determined insufficient or unfair. Notably, there is no provision for a remand of the summary statement under these circumstances. Section 116.190.4 gives the court discretion to *remand a fiscal note or fiscal note summary to the State Auditor* to correct deficiencies, but the statute does not authorize remand of any portion of the ballot title to the Secretary for modification. The statute implicitly allows the court to certify a corrected summary statement, and then "the secretary of state shall certify the language which the court certifies to [her]." Section 116.190.4.

The circuit court has authority to modify the original summary statement based on our finding that the Secretary's use of the word "repeal" was insufficient and unfair.

However, the court was not authorized to re-write the entire summary statement. Accordingly, we reverse the judgment and remand the cause to the circuit court for certification of the following summary statement:

> Shall the Missouri Constitution be amended to change the current ban on human cloning or attempted cloning to limit Missouri patients' access to stem cell research, therapies and cures approved by voters in November 2006 by:
>
> - redefining the ban on human cloning to criminalize and impose civil penalties for some existing research, therapies and cures; and
>
> - prohibiting hospitals or other institutions from using public funds to conduct such research?

**Appeal of the Constitutional Claims**

 Plaintiffs challenge the circuit court's summary dismissal of the state and federal constitutional claims in Counts IV and V of their petition. These claims assert, *inter alia,* that the Secretary used the summary statement to present an inaccurate account of the ballot initiative proposal and, thereby, burdened the Plaintiffs' free speech rights without any compelling government interest and violated their equal protection rights by giving preferential treatment to those who support unrestricted stem cell research. Plaintiffs also contend the circuit court erred in allowing the Intervenors to intervene on Counts IV and V because they had no standing to contest the constitutional claims against the Secretary.

The conduct challenged in the constitutional claims is part of the ballot initiative process under Chapter 116, which has not yet been completed. As discussed above, the Secretary's drafting of the summary statement is one step in the formulation of an official ballot title that is subject to

review by the circuit court. Appellate review is also available. § 116.190.4. The summary statement may be altered in this process, and the ballot title for the initiative petition will not be finalized until the Secretary certifies the language certified by the court. *Id.* Pending completion of this process, no harm or damages can be determined, and Plaintiff's constitutional claims are not ripe for consideration.

The circuit court properly dismissed Counts IV and V *without prejudice*[4] because Plaintiffs failed to state a claim on which relief could be granted at this juncture. Until such claims are viable, we need not consider whether the Intervenors would have standing to defend the Secretary's conduct. The points in Plaintiffs' appeal are denied.

### CONCLUSION

The judgment is reversed with regard to the summary statement and remanded to the circuit court for certification of a summary statement in accordance with this opinion. In all other respects, the judgment is affirmed.

HOWARD, C.J., concurs.

SMART, J. concurs in part and dissents in part, in separate opinion.

JAMES M. SMART, Jr., J., concurring in part and dissenting in part.

The standard of review calls for this court to determine whether the trial court misapplied the law. Once the trial court determines that the Secretary's statement cannot be approved, the trial court can adjust the Secretary's draft, or, if it determines it to be necessary, draft its own summary, seeking to comply with the re-

quirements of law. *See* section 116.190 RSMo 2000.

I agree with my colleagues that the phrase "repeal the current ban on human cloning" would have been likely to confuse rather that to enlighten. I also agree with the majority's ruling on the constitutional claims of the proponents of the amendment. I differ from my colleagues only in that, in my view, the trial court was justified in drafting her own summary in her effort to improve sufficiency and fairness.

---

4. Pursuant to Rule 67.03, an involuntary dismissal is without prejudice unless otherwise

indicated in the court's order.