MISSOURI MUNICIPAL LEAGUE,
et al., Appellants,

v.

Robin CARNAHAN, et
al., Respondents.

No. WD 73911.

Missouri Court of Appeals,
Western District.

Sept. 6, 2011.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 4, 2011.

Application for Transfer Denied
Dec. 20, 2011.

Robert L. Hess II and R. Ryan Harding, Jefferson City, MO, for appellants.

Jeremiah Morgan and Kevin R. Hall, Jefferson City, MO, for respondent Robin Carnahan.

Darrell L. Moore, Jefferson City, MO, for respondent Thomas A. Schweich.

Ronald J. Calzone, Respondent Pro Se.

Before Division Two: THOMAS H. NEWTON, Presiding Judge, CYNTHIA L. MARTIN, Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

This appeal concerns the summary statements, fiscal note summaries, and fiscal notes of three ballot initiative petitions filed with the Missouri Secretary of State. Plaintiffs appeal the Judgment and Order of the trial court certifying the Official Ballot Titles, including the summary statements and fiscal note summaries, and denying plaintiffs' claims with respect to the fiscal notes. We affirm.[1]

## Factual Background

Rob Calzone ("Calzone") submitted three initiative petitions to the Missouri Secretary of State ("Secretary"). Two of the petitions propose amendments to Arti- cle I, Sections Twenty–Six, Twenty–Seven, and Twenty–Eight of the Missouri Constitution, which concern eminent domain and the taking of private property (collectively "the Article I Petitions").[2] The third initiative petition proposes an amendment to Article VI, Section Twenty–One of the Missouri Constitution, which concerns local governments' power to reclaim blighted areas ("the Article VI Petition").

The Summary Statements for the Article I Petitions prepared by the Secretary of State provides the following:

Shall the Missouri Constitution be amended to restrict the use of eminent domain by:

● Allowing only government entities to use eminent domain;

● Prohibiting its use for private purposes, with certain exceptions for utilities;

● Requiring that any taking of property be necessary for a public use while continuing to provide just compensation;

● Requiring that the intended public use be declared at the time of the taking;

● Permitting the original owners to repurchase the property if it is not so used within five years or if the property is offered to a private entity within twenty years?

The State Auditor's office followed its normal process for preparing the fiscal notes and fiscal note summaries for the Article I Petitions, which included soliciting comments from state and local govern-

---

1. Almost identical initiative petitions were filed in 2009 by Calzone. Almost identical challenges were brought by the same parties at that time. This Court issued its opinion regarding those challenges in the case of *Missouri Municipal League v. Carnahan*, 303 S.W.3d 573, 579–80 (Mo.App. W.D.2010) ("*MML I* ").

2. Calzone submitted two versions of the Article I Petitions but the differences between them are immaterial to this appeal as the summary statements, fiscal notes, and fiscal note summaries of the two versions are identical.

mental agencies. The fiscal note summaries of the Article I Petitions, prepared by the State Auditor, state: "The total cost or savings to state or local governmental entities is unknown. Most state governmental entities estimate no costs, however; one state governmental entity reported potential unknown costs. Estimated costs, if any, to local governmental entities could be significant."

The Summary Statement for the Article VI Petition prepared by the Secretary of State provides the following:

Shall the Missouri Constitution be amended to change the power of the General Assembly and constitutionally chartered cities or counties to:

- Prohibit the use of eminent domain to acquire and resell property found to be blighted, substandard or unsanitary for the purpose of clearance, redevelopment or rehabilitation; and
- Allow them to require owners of property found to be a public nuisance to abate or clean up the nuisance and, if the property owner fails to do so in a reasonable time, allow the local government to pay for the abatement and impose a lien to recover the cost?

Again, the State Auditor's office followed its normal procedures to prepare the fiscal note and fiscal note summary for the Article VI Petition. The fiscal note summary prepared by the Auditor's office for the Article VI Petition states: "The total cost or savings to state or local governmental entities is unknown. Most state governmental entities estimate no costs, however, one state governmental entity reported potential unknown costs. Estimated costs, if any, to local governmental entities will vary, but could be significant."

Plaintiff Missouri Municipal League ("MML") is a not-for-profit association of approximately six-hundred and sixty-seven cities, towns, and villages in the State of Missouri. MML was joined by a number of other plaintiffs in this challenge to the summary statements, fiscal notes, and fiscal note summaries for the Article I and Article VI Petitions (collectively "Plaintiffs").[3] Plaintiffs filed suit in the Circuit Court of Cole County where they undertook an expedited schedule of discovery and briefing. The parties entered into a Joint Stipulation as to the evidence with Joint Exhibits and the circuit court heard oral arguments on April 20, 2011. The Circuit Court entered its Order and Judgment in favor of Calzone and the State Auditor, and, therefore, found no error in the summary statements, fiscal notes, fiscal summaries, or processes by which they were prepared. Plaintiffs now appeal.

### Standard of Review

 As in any court-tried matter, we will sustain the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). When reviewing the arguments related to the process followed by the Auditor's office in preparing the fiscal notes, the facts are not in dispute. In those instances, the circuit court's legal conclusions and application of the law to the facts are reviewed without deference to the circuit court's conclusions. *Coyle v. Dir. of Revenue*, 181 S.W.3d 62, 64 (Mo. banc 2005).[4] Similarly, the parties argued the

---

3. The additional plaintiffs are Steven S. Johnson, Michael E. Palmer, and, Howard C. Wright, Jr.

4. *Coyle* was reversed on other grounds by *White v. Director of Revenue*, 321 S.W.3d 298 (Mo. banc 2010).

fairness and sufficiency of the Secretary's summary statements based on stipulated facts, joint exhibits, and undisputed facts. Thus, the only question on appeal is whether the trial court drew the proper legal conclusions, which we review *de novo*. *Overfelt v. McCaskill*, 81 S.W.3d 732, 735 (Mo.App.2002).

*Missouri Municipal League v. Carnahan*, 303 S.W.3d 573, 579–80 (Mo.App. W.D. 2010) ("*MML I*").

## Analysis

■ In Point One, Plaintiffs argue the circuit court erred in upholding the summary statement for the Article I Petitions, because the reference to "just compensation" in the summary statement is unfair and insufficient in violation of section 116.190[5] and will prejudice the public in favor of the proposal in that the summary statement does not describe a change that would be made to the Missouri Constitution but instead restates an existing constitutional principle that would not be changed.

Plaintiffs argue that the reference to "just compensation" in the summary statement for Article I is misleading and prejudices the public in favor of voting for the proposal. The exact language of the disputed portion of the summary statement is as follows: "Requiring that any taking of property be necessary for a public use while *continuing to provide just compensation.*" (Emphasis added.)

The statute that governs the promulgation of summary statements for petitions states:

**5.** All statutory citations are to RSMo 2000 as updated through the most recent cumulative supplement, unless otherwise indicated.

**6.** Section 116.190.3 uses the words, "insufficient *or* unfair" (emphasis added), while

If the petition form is approved, the secretary of state shall within ten days prepare and transmit to the attorney general a summary statement of the measure which shall be a concise statement not exceeding one hundred words. This statement shall be in the form of a question using language neither intentionally argumentative nor likely to create prejudice either for or against the proposed measure. The attorney general shall within ten days approve the legal content and form of the proposed statement.

Section 116.334.1.

■ Citizens may challenge proposed summary statements if they are insufficient or unfair. Section 116.190.3; *United Gamefowl Breeders Assn. v. Nixon*, 19 S.W.3d 137, 140 (Mo. banc 2000).

Insufficient means "inadequate; especially lacking adequate power, capacity, or competence." The word "unfair" means to be "marked by injustice, partiality, or deception." Thus, the words "insufficient [or] unfair" ... mean to inadequately [or] with bias, prejudice, deception and/or favoritism state the [consequences of the initiative].[6]

*Cures Without Cloning v. Pund*, 259 S.W.3d 76, 81 (Mo.App. W.D.2008) (quoting *Hancock v. Sec'y of State*, 885 S.W.2d 42, 49 (Mo.App.1994) (internal citations omitted)). "The critical test is 'whether the language fairly and impartially summarizes the purposes of the measure so that voters will not be deceived or misled.'" *Id.* (quoting *Bergman v. Mills*, 988 S.W.2d 84, 92 (Mo.App. W.D.1999)).

*Cures Without Cloning* and other cases have used the word "and" in place of the word "or," when analyzing this provision. We note that the proper consideration is whether the ballot title is "insufficient *or* unfair."

In *MML I*, this court considered a challenge to a substantially similar ballot initiative. In that case we considered the following language in the summary statement: "Requiring that any taking of property be necessary for public use and that landowners receive just compensation." *Id.* at 586. There, we excised the portion of that statement referring to "just compensation" because "the Missouri Constitution has historically and does currently require just compensation for takings." *Id.* at 588. The redundancy in the statement was unnecessary and potentially prejudicial in that it suggested a change was being made to the Constitution regarding "just compensation" that was not being amended. Plaintiffs analogize that case to the case at bar. However, such an analogy is improper.

Unlike the language in *MML I*, the language before us does not suggest a change is being made to the current Missouri Constitution with respect to "just compensation." The challenged statement clearly states: *"while continuing to provide just compensation."* (Emphasis added.) The statement makes clear that the Missouri Constitution currently provides for "just compensation" when a public taking occurs; and the suggested change is that any taking of property must be necessary for a public use.

■ The mere fact that a proposal references something currently in the Constitution does not make it automatically unfair or prejudicial; indeed, such a rule would be absurd in that at least in some instances context demands a reference to what is currently present to understand the effect of the proposed change. "When courts are called upon to intervene in the initiative process, they must act with restraint, trepidation, and a healthy suspicion of the partisan who would use the judiciary to prevent the initiative process

from taking its course." *Missourians to Protect the Initiative Process v. Blunt*, 799 S.W.2d 824, 827 (Mo. banc 1990). All that is required is that that the language fairly summarizes the proposal in a way that is impartial and does not deceive or mislead voters. *Cures Without Cloning*, 259 S.W.3d at 81. The proposed language in this case fairly and impartially summarizes the purpose of the initiative so that the voters will not be misled.

Point One is denied.

■ In Point Two, Plaintiffs argue the circuit court erred in holding that the fiscal notes and fiscal note summaries prepared by the State Auditor were lawful because the Auditor's policies and procedures for preparing those official fiscal assessments are rules that must be promulgated pursuant to the notice and comment procedures of Chapter 536. The Plaintiff argues that the policies and procedures are statements of general applicability that impact the substantive and procedural rights of members of the public concerning fiscal impact information for initiative proposals and therefore Chapter 536 applies.

The statute which governs the process by which the State Auditor assessed the fiscal impact of a proposed initiative states in the relevant portion:

> [T]he auditor shall assess the fiscal impact of the proposed measure. The state auditor may consult with the state departments, local government entities, the general assembly and others with knowledge pertinent to the cost of the proposal. Proponents or opponents of any proposed measure may submit to the state auditor a proposed statement of fiscal impact estimating the cost of the proposal [. . . .]

Section 116.175.1.

The process the Auditor adheres to in order to comply with the statute is as

follows. The Auditor sends a copy of each initiative petition he receives to various state and local governmental entities which review them and send feedback to the Auditor regarding those entities' estimated costs or savings for the proposed initiative. Section 116.175.1. Any proponents or opponents may also submit their own fiscal impact statements. As part of this process, the Auditor does not notify the general public of his receipt of initiative petitions or seek input from them.

After reviewing the submissions of state and local governmental entities and any additional submissions for completeness and reasonableness, the Auditor sends any questions he may have back to the entity and may follow up with them. This review entails making sure the responses convey a complete representation of what the entity intended to send and is reasonably related to the proposal and to the suggested fiscal impact reported by the entity. If the Auditor finds a response to be unreasonable, he gives less weight to the submission in preparing the final fiscal note summary.

The Auditor then creates the fiscal note. The Auditor's normal policy and procedure is to include verbatim the submissions of state and local government entities and proponents and opponents of the proposal. The Auditor then takes into account all the submissions when drafting the fiscal note summary. The fiscal note summary must be fifty words or less and should be neither argumentative nor likely to create prejudice for or against the proposal. Section 116.175.3. These are the normal procedures of the Auditor and they were followed by the Auditor in this case.

Plaintiffs argue that the fiscal notes and summaries are invalid because the processes and procedures the Auditor uses to create them must be first promulgated as rules subject to the notice and comment procedures required by Chapter 536.

The statute states: "[a]ny state agency shall propose rules based upon substantial evidence on the record and a finding by the agency that the rule is necessary to carry out the purposes of the statute that granted such rulemaking authority." Section 536.016. "Rule" is defined as "each agency statement of general applicability that implements, interprets, or prescribes law or policy, or that describes the organization, procedure, or practice requirements of any agency." Section 536.010(6).

The flaw in the plaintiffs' argument is that they cannot show that a rule is *necessary* to carry out the purposes of the statute. Rules are to be promulgated only when they are "necessary to carry out the purposes of the statute." Section 536.016.1. The relevant portions of the empowering statute provide that:

> [T]he auditor *shall* assess the fiscal impact of the proposed measure. The state auditor *may* consult with the state departments, local government entities, the general assembly and others with knowledge pertinent to the cost of the proposal. Proponents or opponents of any proposed measure *may* submit to the state auditor a proposed statement of fiscal impact estimating the cost of the proposal [. . . .]

Section 116.175.1 (emphasis added). The only directive of the statute is that the "auditor *shall* assess the fiscal impact of the proposed measure." *Id.* (emphasis added). The rest of the statute is entirely discretionary. Further, any such "rule" would not be one of "general applicability" given the broad discretion granted to the Auditor. The Legislature has given the Auditor a great deal of discretion in this regard but it is not unfettered and must be exercised lawfully. *See Mo. Nat'l. Educ.*

*Ass'n v. Mo. State Bd. of Educ.*, 34 S.W.3d 266, 280 (Mo.App. W.D.2000).

In *Missouri National Education Association,* this court considered a challenge by the Missouri National Education Association ("MNEA") to the Missouri State Board of Education's ("Board") process for determining whether a school district could be exempt from a statute mandating that schools make certain expenditures. 34 S.W.3d at 272. The Board was authorized by statute to "[a]dopt rules governing its own proceedings and formulate policies for the guidance of the commissioner of education and the department of elementary and secondary education." *Id.* at 286 (quoting section 161.092 (2004)). The Department of Elementary and Secondary Education ("DESE") drafted certain Guidelines for the exemptions based on input from the school districts, but the evidence showed that the Board did not use the Guidelines. *Id.* at 287. The MNEA argued that the Board was required to promulgate the Guidelines as rules. This Court found that the Board did not act improperly in not utilizing the Guidelines and in not promulgating them as rules because the Board was not bound to follow the Guidelines and "the State Board made its decisions based on the authority granted to it under [the statute]

after considering each request including the reasons for the request stated therein, any certified staff comment received, and the recommendation of the DESE." *Id.* at 287. Thus, the Guidelines did not qualify as rules and did not have to go through the rulemaking procedures.

This is analogous to our case. Like the Board, the Auditor here is making his decision based exclusively on the authority granted to him under section 116.175.1. The fact that the Auditor goes through a standard process to prepare fiscal notes and fiscal note summaries does not transform this discretionary role into one that must be formalized through rules and rulemaking procedures. "An administrative agency need not promulgate rules [...] simply because it has the power to do so." *Id.* at 287 (citing *Artman v. State Bd. of Registration for the Healing Arts,* 918 S.W.2d 247, 251 (Mo. banc 1996)). In drafting the fiscal note, the Auditor is guided by the statute only and is performing his role per his interpretation of the statute. The plaintiffs have not shown why it is necessary that the processes and procedures followed by the Auditor be promulgated under the rulemaking requirements of Chapter 536.[7]

Point Two is denied.

---

7. It is also unclear whether the plaintiffs in this case even have standing to challenge the Auditor's processes. The point fails on other grounds, so we will not fully address it. We will note, however, that "[t]o have standing in its representative capacity, an association must allege that 'its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action . . . that would make out a justiciable case had the members themselves brought suit.'" *Missouri Nat. Educ. Ass'n v. Missouri State Bd. of Educ.,* 34 S.W.3d 266, 275 (Mo.App. W.D. 2000) (quoting *State ex rel. Missouri Health Care Ass'n v. Missouri Health Facilities Review Comm.,* 768 S.W.2d 559, 561 (Mo.App. W.D.1988)). What injury the individual

members of the association may have from the Auditor's alleged failure to properly promulgate its fiscal note drafting procedures as rules is unclear. Section 116.175 defines the process and procedures the Auditor must undertake in drafting fiscal notes. It only provides that proponents or opponents may submit their concerns to the Auditor and the Auditor issued 15 CSR 40–5 to guide those parties on what should be contained in their statements. It remains unclear, however, whether section 116.175 creates any substantive or procedural rights in individuals with regards to the process the Auditor follows in creating fiscal impact statements which, per statute, have been left to the Auditor's discretion.

■ In Points Three and Six, the plaintiffs challenge the language in the fiscal notes and fiscal note summaries.

Plaintiffs argue that the circuit court erred in upholding the fiscal note summaries for the Article I Petitions and the Article VI Petition, because the summaries are both insufficient and unfair in violation of sections 116.175.5 and 116.190 and do not accurately summarize the fiscal notes as required by section 116.175.3, in that the summaries fail to meaningfully convey to voters the magnitude of the costs reported by governmental agencies.

Section 116.175.3 states the following with regard to the requirements of a fiscal note and its summary:

> The fiscal note and fiscal note summary shall state the measure's estimated cost or savings, if any, to state or local governmental entities. The fiscal note summary shall contain no more than fifty words, excluding articles, which shall summarize the fiscal note in language neither argumentative nor likely to create prejudice either for or against the proposed measure.

The following is the information received by the Auditor that went into drafting the fiscal note and fiscal note summary for Article I. The Auditor sought comments from forty-one state agencies or other political subdivisions or entities. Twenty-four of those entities responded. Eleven reported there would be no fiscal impact. One agency reported there would be no costs or saving and another said there would be no significant impact. Yet another agency reported there would be no adverse impact and another deferred to the Office of Administration. The Office of Administration reported there would be no fiscal impact on their office and there should be no impact on general or state revenue. One state agency reported the potential costs were unknown. Two colleges reported there would be no fiscal impact.

Several political subdivisions did report a fiscal impact. St. Louis County estimated costs of $26,920,000. Kansas City estimated millions of dollars of costs and of lost revenues each year. The City of St. Louis estimated a total negative fiscal impact of more than $68,000,000 per year. It estimated costs of over $750,000,000 over a ten year period. The City of Gladstone stated it would realize significant costs increases and lost revenues. The City of Maryland Heights noted that it would substantially increase its costs of acquiring property and estimated costs at $88,000 per year. The St. Louis County Municipal League supported the estimates proffered by St. Louis County and St. Louis City. The City of St. Joseph estimated costs of $37,375,000.

The fiscal note summary drafted by the Auditor stated the following in full for Article I:

> The total cost or savings to state or local government entities is unknown. Most state governmental entities estimate no costs, however, one state governmental entity reported potential unknown costs. Estimated costs, if any, to local governmental entities could be significant.

■ "All of the details of a fiscal note need not be set out in a summary consisting of a mere fifty words." *MML I*, 303 S.W.3d at 583 (citing *Bergman v. Mills*, 988 S.W.2d 84, 92 (Mo.App. W.D.1999)). "Further, a fiscal note summary is not judged on whether it is the "best" language, only whether it is fair." *Id.* (citing *Hancock v. Sec'y of State*, 885 S.W.2d 42, 49 (Mo.App. W.D.1994)). In *MML I*, we considered a very similar fiscal note summary and found that it was sufficient and fair. *See* 303 S.W.3d at 582–83. It seems from the plaintiffs' argument that they

believe the fiscal note summary is unfair because it "fails to inform voters of the amount of the potential costs of the proposed petition." However, plaintiffs have cited no authority that to be meaningful a fiscal note must be detailed as to actual amounts of estimated costs. The summary stated that estimated costs to local governments could be significant, which is a fair statement in light of the fact that only a handful of cities reported potential substantial costs. This is an accurate statement that is unlikely to cause bias, prejudice, deception and/or favoritism for or against the proposal. *See Hancock*, 885 S.W.2d at 49. We refuse to say that the note summary must be more detailed, under the facts of this case, in order to be meaningful.

 Plaintiffs make the same argument as to the Article VI fiscal note summary. The estimated costs of the Article VI note summary varies slightly from the estimates for the Article I fiscal note summary. The Auditor solicited comments on Article VI from the same forty-one entities and received twenty-three responses. Of those twenty-three, only two stated there were estimated costs. St. Louis County estimated costs of $26,920,000. St. Louis City estimated a negative fiscal impact of more than $68,000,000 per year.[8] The fiscal note summary for Article VI also stated that the estimated costs to local government entities "could be significant." For the reasons stated above for affirming the Article I fiscal note summary, plaintiffs' claim of error as to the alleged inadequacy of the fiscal note for Article VI is also rejected.

Point Three is denied.

 In Point Six, plaintiffs argue the circuit court erred in upholding the fiscal note summaries for the Article I and Article VI Petitions, because the Auditor failed to assess the fiscal impact of the proposed measures as required by section 116.175, in that the Auditor engaged in no independent assessment but merely compiled comments submitted by other governmental agencies and transcribed their comments verbatim into the fiscal notes.

Plaintiff's brought this exact complaint to this court in *MML I* and failed. *See* 303 S.W.3d at 580–82. Therefore it need not detain us long. The procedures used by the Auditor in the present case are identical to the Auditor's procedures in the prior case. *See Id.* at 578. In *MML 1* we stated the following:

> Section 116.175.1 specifically authorized the Auditor to send inquiries to those state and local government entities having knowledge pertinent to the proposed legislation. The Auditor then reviewed the responses for reasonableness and completeness. The Auditor's Chief of Staff testified it was their practice to evaluate the responses and to obtain clarification from the entity if the information was unclear. If they found a response to be unreasonable, that affected how much weight was given to the statement in preparing the summary. The plain language of the statute does not mandate that the Auditor adopt another method of independently assessing the costs or saving of the proposal. We conclude the Auditor's current process is adequate to satisfy the statutory requirement.

---

**8.** It should be noted that these cost estimates are identical to the estimated costs by these two entities in regard to the Article I petitions. This may have been considered by the Auditor regarding whether these estimated amounts were reasonable as to any of the initiatives and therefore not reliable enough to be set forth in detail in the summary.

*Id.* at 582. Plaintiffs have offered no additional arguments to compel us to deviate from this precedent. Point Six is denied.

In Point Four, plaintiffs argue that the circuit court erred in upholding the summary statements for the Article I Petitions, because the summary statements are both unfair and insufficient and will prejudice the public in favor of the proposal in violation of section 116.190 in that: (A) the second, third, and fourth bullet points incorrectly state that the proposal will amend the Constitution to prohibit condemnation for a private use and to require that the intended public use be declared at the time of taking when these restrictions are already embraced in the Missouri Constitution; and (B) the summary statements fail to identify the proposal's central purposes of prohibiting uses deemed public under the existing Constitution, eliminating the ability of private utility companies to condemn property, and increasing the costs and timeframes associated with the condemnation process in Missouri.

Plaintiffs correctly recognize that these claims of error have been raised in previous litigation before this court and were rejected. Accordingly, we adopt the analysis of the Court in that previous litigation. *See MML I*, 303 S.W.3d at 585–86.

Point Four is denied.

In Point Five on Appeal, the plaintiffs argue the circuit court erred in upholding the summary statements for the Article VI Petition, because the summary statement is both unfair and insufficient and will prejudice the public in favor of the proposal in violation of section 116.190, in that: (A) the summary statement incorrectly states that it is granting powers to "allow" the General Assembly and constitutionally chartered cities and counties to abate public nuisances when the effect of the proposal is to limit the power of all political subdivisions to abate public nuisances; and (B) the summary statement incorrectly states only that the proposal will prohibit the use of eminent domain to acquire and resell blighted, substandard, or unsanitary property for redevelopment purposes when the proposal will also deprive the General Assembly and constitutionally chartered cities and counties of the power to authorize other actions to further that goal.

Plaintiffs correctly recognize that these claims of error have been raised in previous litigation before this court and were rejected. Accordingly, we adopt the analysis of the court in that previous litigation. *See MML I*, 303 S.W.3d at 583–85.

Point Five is denied.

### Conclusion

The Judgment of the trial court is hereby affirmed.

All concur.