

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| PROTECT CONSUMERS' ACCESS TO QUALITY HOME CARE COALITION, LLC AND ELISA PELLHAM, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

PROTECT CONSUMERS' ACCESS
TO QUALITY HOME CARE
COALITION, LLC AND ELISA
PELLHAM,

          **Appellants,**

v.

JASON KANDER, SECRETARY OF
STATE OF MISSOURI AND NICOLE
R. GALLOWAY, STATE AUDITOR
OF MISSOURI,

          **Respondents.**

**WD79100**

**OPINION FILED:**
**November 17, 2015**

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable Jon E. Beetem, Judge

Before Special Division: James E. Welsh, Presiding Judge, Gary Dean Witt, Judge and
Anthony Rex Gabbert, Judge

This appeal raised issues regarding the summary statement, fiscal note summary, and fiscal note of an initiative petition filed with the Missouri Secretary of State. The initiative petition seeks to require providers of certain in-home services and vendors of consumer-directed services, which receive reimbursement from the State of Missouri pursuant to the MO HealthNet Program, to pay a certain required percentage of the

revenue derived from these services to the individual performing the services in the form of wages and benefits. Plaintiffs Protect Consumers' Access to Quality Home Health Care Coalition, LLC and Elisa Pellham (collectively "Plaintiffs") appeal the Amended Final Judgment of the trial court certifying the Official Ballot Title, including the summary statement, fiscal note summary, and fiscal note, and denying all of Plaintiffs' claims. We affirm in part, reverse in part, and remand for certification of a corrected summary statement.

## FACTUAL BACKGROUND

Jeffrey Mazur submitted to the Missouri Secretary of State ("Secretary") an initiative petition sample sheet (the "Initiative") proposing a number of statutory amendments in relation to Chapter 208.[1] The Initiative seeks to provide that "in-home service providers which receive payments made on behalf of an eligible needy person pursuant to section 208.152, or other state statute providing for payments on behalf of such persons" must pay at least 85% of the revenue received from those services on the "wages and benefits" of the employee who performed those services. Section 208.152 is part of the State of Missouri's system to provide for MO HealthNet (i.e., Medicaid) payments on behalf of eligible persons. Similarly, the Initiative would require vendors of "consumer-directed services" to pay at least 85% of the funds paid by the State for those services to personal care attendants.

The summary statement ("Summary Statement") prepared by the Secretary provides the following:

---

[1] All statutory references are to RSMo 2000 cumulative as currently supplemented, unless otherwise noted.

Shall Missouri law be amended to require in-home service providers and vendors to pay an employee at least 85 percent of the state funds they received for the service provided by the employee to eligible individuals?

The State Auditor's office (the "Auditor") followed its normal processes to prepare a fiscal note ("Fiscal Note") and fiscal note summary ("Fiscal Note Summary").

The Fiscal Note Summary prepared by the Auditor provides the following:

State universities and governmental entities estimate one-time costs exceeding $100,000 with the total costs being unknown and increased annual costs of at least $115,000. Local governmental entities estimate no costs or savings from this proposal.

Plaintiffs filed a timely Petition challenging the Summary Statement, Fiscal Note Summary, and Fiscal Note as insufficient and unfair. The Circuit Court of Cole County conducted a hearing and heard oral arguments on Plaintiffs' claims. The trial court entered its Judgment, which was subsequently amended, that denied Plaintiffs' claims and certified the Official Ballot Title, including the Summary Statement, Fiscal Note Summary and Fiscal Note. Plaintiffs now appeal.

## STANDARD OF REVIEW

*"De novo* review of the trial court's legal conclusions about the propriety of the secretary of state's summary statement and the auditor's fiscal note and fiscal note summary is the appropriate standard of review when there is no underlying factual dispute that would require deference to the trial court's factual findings. *Brown v. Carnahan*, 370 S.W.3d 637, 653 (Mo. banc 2012).

## ANALYSIS

### Point One

In Point One on appeal, the Plaintiffs argue the trial court erred in certifying the Summary Statement because the Secretary's Summary Statement is insufficient and unfair in that it fails to summarize the Initiative in a manner that will not deceive or mislead voters.

The statute that governs the promulgation of summary statements for petitions states, in relevant part:

> [T]he secretary of state shall prepare and transmit to the attorney general a summary statement of the measure which shall be a concise statement not exceeding one hundred words. This statement shall be in the form of a question using language neither intentionally argumentative nor likely to create prejudice either for or against the proposed measure.

§ 116.334.1.

Citizens may challenge proposed summary statements alleging they are insufficient or unfair. §116.190; *Mo. Mun. League v. Carnahan*, 364 S.W.3d 548, 552 (Mo. App. W.D. 2011). "Insufficient means 'inadequate; especially lacking adequate power, capacity, or competence.' The word 'unfair' means to be 'marked by injustice, partiality, or deception.' Thus, the words 'insufficient [or] unfair' ... mean to inadequately [or] with bias, prejudice, deception and/or favoritism state the [consequences of the initiative]."[2] *Mo. Mun. League*, 364 S.W.3d at 552 (quoting *Cures Without Cloning v. Pund*, 259 S.W.3d 76, 81 (Mo. App. W.D. 2008)).

---

[2] Section 116.190.3 uses the words, "insufficient or unfair" (emphasis added), while *Cures Without Cloning* and other cases have used the word "and" in place of the word "or," when analyzing this provision. We note that the proper consideration is whether the ballot title is "insufficient or unfair."

4

The ballot title is sufficient if it "makes the subject evident with sufficient clearness to give notice of the purpose to those interested or affected by the proposal." *Overfelt v. McCaskill*, 81 S.W.3d 732, 738 (Mo. App. W.D. 2002) (superseded in part by statutes) (quoting *United Gamefowl Breeders Ass'n of Mo. v. Nixon*, 19 S.W.3d 137, 140 (Mo. banc 2000)). "[E]ven if the language proposed by [Plaintiffs] is more specific, and even if that level of specificity might be preferable, whether the summary statement prepared by the Secretary of State is the best language for describing the referendum is not the test." *Id*. (quoting *Bergman v. Mills*, 988 S.W.2d 84, 92 (Mo. App. W.D. 1999)). "The critical test is 'whether the language fairly and impartially summarizes the purposes of the measure so that voters will not be deceived or misled.'" *Cures Without Cloning*, 259 S.W.3d at 81 (quoting *Bergman*, 988 S.W.2d at 92).

The Plaintiffs claim that the Summary Statement is insufficient or unfair in a number of respects. The Plaintiffs argue the Summary Statement: (1) fails to inform voters that the subject of the measure is in-home healthcare services for individuals in the MO HealthNet Program; (2) wrongly and confusingly describes "personal care attendants" as "employees"; (3) fails to describe who are "eligible individuals," and "vendors," and (4) uses the misleading term "pay".

Plaintiffs first argue that the Summary Statement is insufficient or unfair because it fails to inform voters that the subject of the measure is in-home *healthcare* services for individuals receiving services under the MO HealthNet Program. Plaintiffs point is well taken. The Summary Statement is intended to give notice to voters of the subject of the initiative so that they may make an informed choice on whether to investigate the matter

5

further. Thus, we have said that the Summary Statement must "make[] the subject evident with sufficient clearness to give notice of the purpose to those interested or affected by the proposal." *Overfelt*, 81 S.W.3d at 738. "Sometimes it is necessary for the secretary of state's summary statement to provide a context reference that will enable voters to understand the effect of the proposed change." *Brown*, 370 S.W.3d at 654.

The Summary Statement as currently drafted only uses the term "in-home service providers" and fails to give any indication as to the underlying subject matter or the individuals who would be affected by the Initiative. "In-home service providers" gives no indication as to what types of services are contemplated or under what programs. At the very least, the language must include a reference to MO HealthNet, the statutory scheme that is explicitly referenced in the Initiative itself, which would give notice regarding the subject matter and individuals who would be affected by the Initiative. We decline to go further and require that the services being provided are described as "healthcare" services, as requested by Plaintiffs, as the services provided by the vendors of consumer-directed services include services that would not necessarily be considered "healthcare." *See* §208.900 (services provided by personal care attendants include assisting customers with routine tasks, such as moving into and out of bed, consuming food and drink, bathing and grooming, housekeeping, etc.) As the new language will include a reference to MO HealthNet, this is sufficient to give fair and sufficient notice to voters of the subject matter of the proposal.

Second, Plaintiffs argue that the use of the term "employees" is misleading because the Initiative, insofar as it pertains to "vendors" that receive payments under the

6

"consumer-directed services program," would require 85% of the revenues received to be paid to "personal care attendants" who are not employees. The point is also well taken. Vendors that receive payments under the "consumer-directed services program" do not necessarily have an employer-employee relationship with personal care attendants. "Consumer-directed" is defined as "the hiring, training, supervising, and directing of the personal care attendant *by the consumer,*" who is the person receiving the services. §208.900(2) (emphasis added). A "personal care attendant" is defined as "a person, other than the consumer's spouse, who performs personal care assistance services for the consumer." §208.900(6). Vendors, on the other hand, have an agreement with the State "to provide services including monitoring and oversight of the personal care attendant, orientation, and training of the consumer, and fiscal conduit services necessary for delivery of personal care assistance services to consumers." §208.900(10). The individual receiving the services is responsible for supervising the personal care attendant, verifying wages, submitting time sheets, etc., whereas the vendor collects and certifies time sheets, overseas the Medicaid reimbursement process, and transmits payments. *See* §208.909. Referring to personal care attendants as "employees" of the vendor is inaccurate and misleading. This can be easily remedied by including in the Summary Statement a separate reference to personal care attendants.

The remaining three objections to the proposed language by Plaintiffs are without merit. Plaintiffs argue that "eligible individuals" should be changed to "eligible needy individuals." We do not see any reason why the Secretary should be required to classify the individuals receiving these services as "needy" and the Plaintiffs offer no reason why

7

such a description is required to make the language sufficient or fair. Similarly, the Plaintiffs would like "vendors" changed to "personal care assistance service vendors." However, as explained above, the language of the Summary Statement will be changed to specify that vendors will pay "personal care attendants," so this concern has already been addressed. Finally, the Plaintiffs object to the term "pay" because it does not specify that the pay is actually pre-tax wages and benefits. Such specificity in a summary is not mandatory. The question is whether voters will be objectively informed as to the subject matter of the initiative. "Pay" here is sufficient for this purpose and voters will be able to inquire further as to the specifics of what constitutes "pay" by looking at the Initiative itself.

The trial court has the authority to modify the original Summary Statement based on our findings above. *See Cures Without Cloning*, 259 S.W.3d at 83. Accordingly, we reverse the judgment and remand the cause to the trial court for certification of the following summary statement:

> **Shall Missouri law be amended to require in-home service providers and vendors to pay an employee or personal care attendant at least 85 percent of the state funds they received under the MO HealthNet Program for the service provided by the employee or the personal care attendant to eligible individuals?**

### Point Two

In Point Two on appeal, the Plaintiffs argue that the trial court erred in certifying the Fiscal Note Summary because it is unfair and insufficient in that (A) it misrepresents the information in the fiscal note concerning costs to state universities and (B) it fails to account for any impact on the state's tax revenue.

8

Section 116.175.3 requires that the Auditor create a fiscal note and fiscal note summary that states the measure's "estimated cost or savings, if any, to state or local governmental entities." The summary can be no more than fifty words and can be neither argumentative nor likely to create prejudice for or against the propose measure. *Id.*

> In the context of requiring a fair and sufficient fiscal note by the state auditor, "the words insufficient and unfair ... mean to inadequately and with bias, prejudice, deception and/or favoritism state the fiscal consequences of the proposed proposition." *Hancock v. Secretary of State*, 885 S.W.2d 42, 49 (Mo.App.1994). Similarly, in examining the fairness and sufficiency of the fiscal note summary, the summary's words are considered sufficient and fair where they adequately and without bias, prejudice, or favoritism synopsize the fiscal note. *See id.* "[A] fiscal note summary is not judged on whether it is the 'best' language, only [on] whether it is fair." *Missouri Mun. League*, 303 S.W.3d at 583.

*Brown*, 370 S.W.3d at 654.

The Auditor received information concerning three potential types of public costs to the State of Missouri of this proposal. First, the Auditor received information from the Missouri Department of Social Services regarding potential costs of at least $115,000 annually. These costs are not in dispute.

Second, the Auditor received an email from Matthew Levsen, Associate Chief Financial Officer of University of Missouri Health Care. The email stated that University of Missouri Health Care determined that the Initiative "could create additional expenses in excess of $100,000," which would be incurred "as the payment systems change for health care services from 'fee for service' methodology to a more bundled or capitated payment system." He added, however, that "[t]he amounts are not able to be estimated at

9

this time due to the language of the petition itself and the future timeline of the payment systems."

Third, the Auditor received information from the Initiative's proponents that indicated (1) employees and personal care attendants would receive an increase in wages and benefits as a result of the Initiative and (2) more than 300 for-profit companies would see a corresponding decrease in profits.

The Fiscal Summary prepared by the Auditor states:

> State universities and governmental entities estimate one-time costs exceeding $100,000 with the total costs being unknown and increased annual costs of at least $115,000. Local governmental entities estimate no costs or savings from this proposal.

Plaintiffs first argue that the reference to "universities" is misleading because only one individual responded, Mr. Levsen, the Associate Chief Financial Officer of University of Missouri Health Care. The Auditor responds that the opening line is used in the collective for all of the response information received by the Auditor's Office and not only to those entities that actually responded and that it was reasonable to infer that Mr. Levsen's response was sent by the University of Missouri System as a whole.

We agree with the Auditor that the use of the collective term "state universities and governmental entities" is not unfair or insufficient, even if only one entity did in fact respond. For the purposes of a *summary*, limited by statute to fifty words, it is reasonable for the Auditor's office to state that this single estimated cost was the only estimate provided by the state's universities. It would be unnecessarily cumbersome to require the Auditor's office to more specifically categorize each response received in a summary.

The Auditor is tasked with soliciting information from state and local governmental entities to determine what probable affect the initiative would have on state and local finances. Framing the response as one collectively from the state universities and governmental entities as a whole is not misleading or unfair.

In addition, here it was a reasonable inference for the Auditor to make that the response it received from Mr. Levsen represented the University of Missouri System as a whole. The record shows that Mr. Levsen's response was made per the direction of Ryan Rapp, Controller for the University of Missouri System, who was copied on the response. (LF 151). As multiple universities are part of that system, it was reasonable to infer that the response sent by Mr. Levsen, at the direction of the University of Missouri System Controller, represented a response on behalf of the system as a whole.

The Plaintiffs also argue that the inclusion in the summary of "one-time costs exceeding $100,000 with the total costs being unknown" is not supported by the response received from Mr. Levsen. We disagree. Mr. Levsen's response was clear that the proposal "could create additional expenses in excess of $100,000" and that the expenses "would be incurred as the payment systems change for health care services from 'fee for service' methodology to a more bundled or capitated payment system." The email continues on to say that he is unable to give an estimate of the amounts "due to uncertainty in the language and timeline of the change in the payment system." The Auditor's conclusion that Mr. Levsen's estimate was a one-time cost was supported by Mr. Levsen's statement that the costs would incurred due to the need to change the

11

payment system. It was reasonable to infer that this cost was a singular cost as nothing in Mr. Levsen's statement suggests that this cost would be recurring.

Plaintiffs' argument that Mr. Levsen's cost estimate should not be included at all because it is not definite enough must also fail. The Auditor must include submissions in the fiscal note regarding the *potential* cost or savings to state or local government entities as a result of the initiative. *See Brown*, 370 S.W.3d at 649-50. The role of the Auditor is not to judge the merits of a fiscal impact submission, but only to examine to determine whether the submission is complete, is relevant, has an identifiable source, and is reasonable. *Id*. at 649. Mr. Levsen clearly stated that the costs to the university system could be greater than $100,000 for the reason he provided but the actual costs were indeterminate due to ambiguity in the Initiative's language and timing. These determinations will almost always be estimates and nothing more can be expected. It is fair to characterize Mr. Levsen's estimate in the fiscal note summary as "one-time costs exceeding $100,000 with the total costs being unknown."

The Plaintiffs also argue that the Fiscal Note Summary is inadequate because it fails to account for impact on the State's tax revenue. The Plaintiffs impose on the Auditor a duty it does not have. Our Supreme Court has recently described the function of the Auditor as it relates to fiscal notes and summaries of proposed initiatives as follows:

> In preparing the fiscal note, the auditor sends copies of the proposed ballot initiative to various state and local governmental entities requesting the entities review the same and provide information regarding the estimated costs or savings, if any, for the proposed ballot initiative. *See* sec. 116.175.1 (stating that the auditor "may consult with the state departments,

12

local government entities, the general assembly and others with knowledge pertinent to the cost of the proposal"). The auditor chooses local governmental entities based on geography, population, and form of government to ensure a good cross-section of local governments that might be affected by the proposal are represented. Proponents, opponents, and members of the public may submit fiscal impact submissions also; however, the auditor has no duty to notify members of the public when he receives an initiative petition from the secretary of state.

The auditor does not analyze or evaluate the correctness of the returned fiscal impact submissions. Rather, he or she examines the submissions to determine whether they appear complete, are relevant, have an identifiable source, and are reasonable. The auditor studies each submission regarding completeness, determining whether the entity's response conveys a complete representation of what the entity intended to send and if it reasonably is related to the proposal. He also reviews the submission to ensure there are no missing pages or breaks in the continuity of information. With respect to reasonableness, the auditor examines the submission to establish whether it addresses or diverges from the particular issue. The auditor's determination of reasonableness is based on the auditor's experience in state government and overall knowledge and understanding of business and economic issues. If the auditor concludes a submission is unreasonable, he or she determines what weight the submission will be given when preparing the fiscal note summary. If the auditor has any questions regarding the submission of an entity or needs to clarify an incomplete submission, he or she may conduct a follow-up inquiry.

The auditor then drafts the fiscal note and fiscal note summary based solely on the responses he or she receives. The responses submitted are listed verbatim in the fiscal note with only minor editing. The fiscal note summary is a compilation of the various proposals and is intended to advise the voters about the potential cost or savings, if any, from the adoption of the initiative.

*Brown*, 370 S.W.3d at 649-50. (footnotes omitted). In addition,

[t]he auditor is not required to compel and second-guess reasonable submissions from entities but is able to rely on the responses submitted. Nor should the auditor wade into the policy debates surrounding initiative petitions, which an independent investigation would entail [ . . . ] It is not the auditor's role to choose a winner among these opposing viewpoints by independently researching the issue himself, double-checking economic theories and assumptions, and adopting one side's view over another's in the resulting fiscal note.

13

*Id*. at 650.

While the Auditor received general statements regarding potential impacts on the economy by the proponents of the Initiative, the Auditor received no submission that provided a projection of an increase or decrease of tax revenue to the State. Having received no submission regarding an impact on state finances for the Fiscal Note, it would be improper for the Auditor to include comment upon any impact to state finances in the summary. The Plaintiffs do not identify a submission or projection that they believe should have been included by the Auditor, but rather argue that based upon Missouri's tax structure there *must* be some impact. The analysis provided by Plaintiffs on appeal regarding possible tax consequences is mere conjecture and, regardless, it was not timely provided to the Auditor for inclusion in the Fiscal Note. As explained above, it is not the Auditor's responsibility to undertake an independent investigation and comment upon a possible impact to state finances if no submissions are made to the Auditor describing those impacts.

Point Two is denied.

### Point Three

In Point Three on appeal, the Plaintiffs argue the trial court erred in certifying the Fiscal Note because it is unfair and insufficient in that it fails to undertake any examination of the initiative's impact on small businesses as Plaintiffs allege is required by Section 116.175.1. The fairness and sufficiency standards set out above are equally applicable to fiscal notes. *See Brown*, 370 S.W.3d at 653.

14

Section 116.175.1 provides, in relevant part, as follows:

[U]pon receipt from the secretary of state's office of any petition sample sheet, joint resolution or bill, the auditor shall assess the fiscal impact of the proposed measure. The state auditor may consult with the state departments, local government entities, the general assembly and others with knowledge pertinent to the cost of the proposal. *Proponents or opponents of any proposed measure may submit to the state auditor a proposed statement of fiscal impact estimating the cost of the proposal in a manner consistent with the standards of the governmental accounting standards board and section 23.140*, provided that all such proposals are received by the state auditor within ten days of his or her receipt of the proposed measure from the secretary of state.

(emphasis added). Thus, the language of the statute explicitly provides that proponents or opponents of a measure, if they submit a proposed statement of fiscal impact, must comply with Section 23.140, which provides, *inter alia*, that the statement include whether the legislation would have an impact on small businesses. *See* §23.140.2(6). Proceeding back to Section 116.175.2, the Auditor is required to "prepare a fiscal note and a fiscal note summary for the proposed measure [ . . . . ]" The fiscal note "shall state the measure's estimated cost or savings, if any, *to state or local governmental entities*." § 116.175.3 (emphasis added). As is clear from the language above, there is no requirement that the Auditor include a statement regarding the impact to small businesses in the fiscal note and nothing requires the Auditor to undertake its own investigation on the measure's impact to small businesses.

Oddly, the Plaintiffs do not recognize that, regardless, the Auditor did include a statement regarding the fiscal impact to small businesses in the Fiscal Note. The Auditor's practice is to include all submissions in the fiscal note, including statements regarding impacts to small businesses, if they are timely received and meet the Auditor's

15

standards for inclusion, described *supra*. As is required by Sections 116.175 and 23.140, the proponents of the measure included a statement of impact to small businesses that was included in the Fiscal Note. The Auditor followed its standard practice here and nothing in the statute requires anything further.

Point Three is denied.

## CONCLUSION

The judgment is reversed with regard to the Summary Statement and remanded to the circuit court for certification of a summary statement as follows:

**Shall Missouri law be amended to require in-home service providers and vendors to pay an employee or personal care attendant at least 85 percent of the state funds they received under the MO HealthNet Program for the service provided by the employee or the personal care attendant to eligible individuals?**

In all other respects, the judgment is affirmed.

_____
Gary D. Witt, Judge

All concur

16